(No. 26540.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM ORLANDO, Plaintiff in Error.

*Opinion filed May 13, 1942—Rehearing denied Sept. 17, 1942.*

FARTHING, WILSON, and GUNN, JJ., dissenting.

WM. SCOTT STEWART, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and RICHARD B. AUSTIN, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiff in error was convicted by jury of a violation of section 9 of article 6 of the City Elections act. (Ill. Rev. Stat. 1941, chap. 46, par. 259.) He was sentenced to the penitentiary for an indeterminate term of not less than one nor more than ten years, as provided in said section. By the writ of error in this case he seeks to reverse that judgment. The misconduct charged in the indictment was in connection with the judicial election held on June 5, 1939. Orlando was a precinct captain in the 52nd precinct of the 11th ward in the city of Chicago. He was indicted jointly with one Vinci, his co-captain and the judges and clerks of election in that precinct. The indictment contained nine counts. Orlando was granted a severance on motion of the State's Attorney. Later all the counts in the indictment except the sixth and eighth counts were *nolled* by the State's Attorney.

The sixth count charged that Orlando, jointly with the other defendants named therein, placed a large number of ballots in the ballot box which had not been lawfully marked or cast by qualified electors.

The eighth count charged that Orlando, who was alleged not to have been a judge or clerk of election, jointly with the other defendants named therein, did unlawfully advise and abet the judges and clerks of election to falsify parts of the poll list, and did bind with the genuine a large number of false applications for ballots, none of which had been signed by qualified electors, and that said false applications had thereon the initials of a judge of election,

thereby making it appear that the voters had cast these ballots, whereas, in truth and in fact, he (and other defendants named) well knew none of said electors had appeared and voted.

Section 8 of article 6 of said act (Ill. Rev. Stat. 1941, chap. 46, par. 258) provides that every judge of election, poll clerk and other officer or person having the custody of any record, register of voters, or copy thereof, oath, return or statement of votes, certificate, poll list or any paper, document or vote of any description, in the act directed to be made, filed or preserved, who is guilty of stealing, willfully destroying, mutilating, defacing, falsifying or fraudulently removing or secreting the whole or any part thereof; or who shall fraudulently make any entry, erasure or alteration therein, except as allowed and directed by the provisions of the act, shall be guilty of a felony.

Section 9 provides that every person who is not an officer, such as is mentioned in section 8, who shall be guilty of any of the acts specified in section 8, or who advises, procures or abets the commission of the same, shall be guilty of a like felony. It further provides that any such offense shall be deemed to have been committed whether such person has or had any custody or control of, rightfully or otherwise, or is charged with any duty in relation to, such records, register, ballots or other documents.

It appears from the evidence that the defendant Orlando, with the consent and knowledge of the judges and clerks of election, took a number of applications for ballots from the voting place and obtained the signatures of voters on such applications who did not appear at the voting place. These signed applications were delivered by him to the judges and clerks of election. In return there was delivered to him by some of the judges or clerks, an equal number of ballots which he, together with one of the judges, proceeded to mark, and said ballots were initialed

by one of the election judges and placed in the ballot box. After this was done, with the consent of the judges and clerks of election, he took more application blanks from the polling place. He returned them with signatures thereon purported to be the signatures of registered voters. These signatures when compared with the signatures on the register were found not to be the genuine signatures of the voters whose signatures they purported to be. Nevertheless, upon the insistence of plaintiff in error, an equal number of ballots was given him by the judges and clerks of election and with the assistance of one of the judges this group of ballots was also voted by plaintiff in error, initialed by one of the judges, and deposited in the ballot box. A third group of applications was then taken out by plaintiff in error which were also returned by him with forged signatures, as was the second group. Notwithstanding it was determined the signatures on these applications were not genuine, plaintiff in error and one of the judges of election marked a like number of ballots which were initialed and deposited in the ballot box.

After the polls were closed the ballots were counted. It was found that there were five more ballots in the ballot box than applications for ballots on file with the judges of election. At the suggestion of plaintiff in error, five applications were signed by the election officials in order to make the number of applications agree with the number of ballots found in the ballot box. These facts all clearly appear from the testimony of some of the judges and clerks of election and are not in dispute.

Prior to the trial of this case, plaintiff in error had been tried on a charge of conspiring with election judges to falsely canvass the ballots, make a false return of the election and to falsify and change ballots, unlawfully influence voters, cast ballots for voters who were not present and forge applications for ballots. On the trial of this conspiracy charge, he was found not guilty.

In the trial of this case the prosecution called as a witness one of the judges of election who testified to the facts, as above stated, concerning the occurrences in connection with the applications and ballots above referred to. The other judges and clerks of election were called by the court as court witnesses. They were cross-examined both by the prosecution and the attorney for the defense. Their testimony in the main corroborated the testimony of the judge who was called as a witness by the State's Attorney. These witnesses, however, admitted on cross-examination that they had previously told a different story in an effort to clear themselves.

Plaintiff in error first contends that the evidence does not support the verdict. The testimony of these witnesses was sufficient to support the verdict. He argues that these witnesses were not worthy of belief. This argument is not as to the sufficiency of the evidence, but as to its weight. The answer is that the jury saw and heard the witnesses testify and accepted their testimony and acted upon same. The weight of the evidence was a question for the jury.

The next contention of plaintiff in error is that the verdict of the jury is defective and insufficient. The verdict is in the following language: "We, the jury, find the Defendant, Sam Orlando, Guilty of advising, procuring and abetting the falsifying of a poll list, as charged in the indictment."

Plaintiff in error, while admitting that a verdict finding a defendant "Guilty as charged in the indictment" would be sufficient, argues that when the verdict attempts to enumerate the elements of the crime all elements necessary to constitute the crime must be included or the verdict will be insufficient. This argument is based upon language found in *People* v. *Lee,* 237 Ill. 272, and *People* v. *Lemen,* 231 id. 193. It was said, however, in *People* v. *Lee, supra,* "verdicts are not to be construed as strictly as pleadings, but

are to have a reasonable intendment and to receive a reasonable construction and should not be set aside unless from necessity originating in doubt as to their meaning, or from the immateriality of the issues found, or a failure to find upon some material issue involved."

Plaintiff in error contends that, when the jury attempted to enumerate in the verdict the elements constituting the crime of which he was found guilty, in addition to the language therein contained it was necessary, in order to make the verdict sufficient, that the following elements be included, namely: (1) That plaintiff in error was not an officer, (2) that he acted willfully and (3) that he aided and abetted the judge of election.

In considering what elements are necessary to be included in the verdict, we must keep in mind that a failure to technically describe the crime will not operate to prejudice the defendant to the extent that a similar lack of detail in an indictment might result in such prejudice. In an indictment it is necessary to set forth the crime charged with particularity so that the defendant can adequately prepare his defense. But in a verdict it is only necessary to show that the defendant has been found guilty of the crime with which he is charged in the indictment. It is for this reason that we have held that a verdict is sufficient which merely finds the defendant "guilty," (*Davis* v. *People,* 50 Ill. 199; *Armstrong* v. *People,* 37 id. 459,) or "guilty as charged in the indictment." (*Donovan* v. *People,* 215 Ill. 520; *People ex rel. Hutchinson* v. *Murphy,* 188 id. 144.) In *People* v. *Lee, supra,* and *People* v. *Lemen, supra,* the difficulty with the wording of the verdict was that it limited the finding of "guilty" to a few facts, which were in themselves insufficient to constitute the crime or identify it as the one charged in the indictment. In that case, it was found that by no reasonable construction of the language in the verdict, could it be determined that

the jury found the defendant guilty of the crime charged in the indictment. We find no such difficulty in construing the verdict in this case. By the verdict the defendant was found guilty of having advised, procured and abetted the falsification of the poll list as charged in the indictment. By the use of the word "procured" the jury impliedly found that the act was willfully done and that someone acting in an official capacity·was aided and abetted or the result found would not have been "procured." Further the statute makes one guilty who advises, procures or abets the commission of. the acts set out in section 8. The words "willfully" or "knowingly" are not found in section 9. The various crimes involving election officers are defined in section 8. The word "willfully" is used in that section only in connection with destroying certain records and not in connection with falsifying such records. Neither the word "willfully" nor the word "knowingly" is used in section 9 in defining the offense created by that section.

The test of the sufficiency of the verdict is whether the jury's intention can be ascertained with reasonable certainty from the language used. (*People* v. *Freitag,* 336 Ill. 286; *People ex rel. Reed* v. *Williams,* 334 id. 241; *People* v. *Patrick,* 277 id. 210.) Nothing is omitted from the verdict in this case from which any difficulty arises in ascertaining the intention of the jury or in identifying the crime for which the defendant was found guilty. In our opinion, the verdict is sufficient.

Plaintiff in error further contends that the indictment is not sufficient in that it does not show the exact nature of the crime charged and that the verdict by referring to the indictment is, for that reason, insufficient. In this connection it is argued that the indictment was sufficient to also include the offenses created by section 2 of article 6 of the act; (Ill. Rev. Stat. 1941, chap. 46, par. 252;) that the offenses created by said section 2 are misdemeanors, while the offenses created by section 9 are felonies. From this it

is argued that it is impossible to determine from the language of the verdict returned whether the jury intended to find plaintiff in error guilty of a felony under section 9, or of a misdemeanor under section 2.

It is true that an indictment under section 9 which alleges sufficient facts to constitute a felony under that section would also include the facts necessary to be alleged as constituting a misdemeanor under section 2. In this situation it was the duty of plaintiff in error to request instructions as to the form of the verdict and defining the lesser offense, if he desired to do so. (*People* v. *Rave,* 364 Ill. 72; *People* v. *Funk,* 325 id. 57.) We are not persuaded that because the facts alleged in the indictment in this case may have been sufficient to charge both a felony under section 9 and a misdemeanor under section 2, the indictment is rendered indefinite or prejudiced the defendant in making his defense.

It is next contended that the City Elections act is invalid because it is asserted that the title is not broad enough to include the offenses created by section 9. In this connection it is sufficient to say that a similar objection was raised and urged to the section providing penalties for election officers in *People ex rel. Broomell* v. *Hoffman,* 322 Ill. 174, and overruled by this court. This objection to the validity of the act is without merit.

It is further contended that the acquittal of plaintiff in error of the charge of conspiracy with the election judges to obtain a false and fraudulent vote in said precinct constitutes an adjudication and a bar to the present prosecution. The indictment in this case charged the commission of the offense created and defined by said section 9. The prior acquittal was for the crime of conspiracy to commit the offense. Where the crime charged is the actual commission of the offense, it is a different charge from that of a conspiracy to commit that offense. (*People* v. *Darr,* 255 Ill. 456.) It is clear that the crime for which defend-

ant in error was tried in this case was an entirely separate offense from the charge of a conspiracy to commit such offense.

It is contended by plaintiff in error that the court erred in compelling him to try the case before a jury since he had waived the right of trial by jury and had requested a trial by the court. This case was tried before the amendment of 1941 to section 8 of division 13 of the Criminal Code. (Laws of 1941, p. 574.) It is governed by the decision of this court in *People* v. *Scornavache,* 347 Ill. 403. The above amendment to the Criminal Code, which did not become effective until July 15, 1941, has no application to this case.

It is also contended that the court unduly limited the defendant in his cross-examination of the witnesses for the State. Most of the questions to which objections were sustained were obviously for the purpose of showing that the issue in this particular election was between two factions of one of the major political parties. This was wholly immaterial and not responsive to any issue in the case. The trial judge did permit much evidence of this character to be admitted before the objections were sustained, all of which should have been excluded.

It is next argued by plaintiff in error that the court abused its discretion in calling certain judges and clerks of election as court witnesses and permitting the prosecution to cross-examine such witnesses. It is argued that this was a preconceived plan of the State's Attorney in order to permit him to show in evidence prior statements made by these witnesses. The record does not justify this contention. The questions asked these witnesses by the State's Attorney for the purpose of laying a foundation for impeachment were limited to the testimony given by the witnesses on an investigation before the county court. It was not error for the court to call these witnesses as court witnesses. (*People* v. *Dascola,* 322 Ill. 473; *People* v. *Car-*

*dinelli,* 297 id. 116.) Plaintiff in error also claims that he was prejudiced because of the fact that the State's Attorney was permitted to cross-examine him with reference to the fact that he owned a tavern. He had denied such ownership and it was legitimate cross-examination for the State's Attorney to ask him for an explanation as to why he had signed the word "tavern" on certain checks. This was for the purpose of impeaching the defendant as to the statements he had made in the testimony in which he denied the ownership of a tavern.

It is further argued that plaintiff in error was prejudiced because the State's Attorney was permitted to ask him if he had not at one time, in connection with the investigation growing out of the election, claimed his constitutional rights and had refused to answer questions propounded to him, by the State's Attorney, on that ground. This matter arose during the course of defendant's testimony concerning the first meeting with the State's Attorney. It was shown without objection that the defendant told the State's Attorney at that meeting that he did not care to answer any more questions. He was then asked if he had elected to stand on his rights and refused to answer on that ground, and his answer was "yes." The subject was then dropped and not pursued further. The record does not show that any harm or prejudice resulted to the defendant from this incident.

Complaint is next made of the character witnesses who were brought in to testify against plaintiff in error. It is ingeniously argued that the State's Attorney, to rebut the evidence of good character offered by the defendant, placed on the witness stand certain police officers who knew that Orlando had been arrested some eight years before; that because such witnesses had knowledge of the prior arrest of plaintiff in error his counsel did not dare cross-examine the witnesses for the reason that they might, in their answers, disclose the fact of the prior arrest. It is argued

that the result of this was to refuse plaintiff in error the right to cross-examine the witnesses and that he should have been granted a new trial for that reason. No question of this kind was raised during the trial. It was raised only on the motion for a new trial. When a person is on trial for a crime and puts his good character in issue by offering proof, it is unfortunate for him, of course, if the prosecution calls witnesses to disprove such good character, who have knowledge concerning the defendant's prior conduct which would be injurious to him if it was brought out on cross-examination of such witnesses. If the defendant is lucky enough that prior charges against him have not been disclosed because he did not cross-examine the witnesses, he cannot, after the trial is concluded, claim it was error for the prosecution to present witnesses against him who were familiar with occurrences in his life which would have been detrimental to him if disclosed on cross-examination. Naturally, the State's Attorney had the right to call any witnesses whom he desired in rebuttal of the evidence offered by the defendant tending to show his good reputation and character. The fact that these witnesses may have known some fact detrimental to the defendant which was not disclosed by the witnesses on the witness stand does not prevent the State's Attorney from calling such witnesses even though their cross-examination by the defendant's counsel might have divulged the prior arrest of the defendant for other offenses. We are not impressed with this objection nor do we think the record justifies the assumption that the State's Attorney was endeavoring to lay a trap by which the prior conduct of the defendant would be disclosed on cross-examination of these witnesses. Naturally, the State's Attorney could only call witnesses to testify on the subject of the reputation and character of the defendant who were familiar with that reputation. The fact that they were police officers who had knowledge of the prior arrest of defendant does not justify the charges

made against the State's Attorney in this case. At any rate, no improper disclosures were made by any of these witnesses and the defendant was not denied the right to cross-examine the witnesses. He refused to cross-examine them only because he feared the disclosures which such examination might reveal.

It is next contended by plaintiff in error that the verdict is not supported by the evidence. He bases this contention on his statement that the witnesses were of low character and unworthy of belief. The weight of the evidence and the credibility of the witnesses were questions for the jury to determine. On those issues the jury found against the defendant. This court will not substitute its judgment for that of the jury on questions of this kind.

It is next argued that instruction No. 14 was erroneous. This instruction defines an accessory in the language of the Criminal Code. The argument is that since the crime charged is created by section 9 of article 6 of the City Elections act and not by the Criminal Code the definition of an accessory found in the Criminal Code does not apply. Plaintiff in error was charged in the indictment as a principal and not as an accessory. The section of the Criminal Code on which this instruction was based defines accessories and further provides that they shall be considered as principals and punished accordingly. An accessory is defined as one who has advised, encouraged, aided or abetted the perpetration of the crime. Section 9 of article 6 of the City Elections act on which the indictment in this case was based, in defining the offense, uses the words "advises" or "abets." One who advises or abets the commission of an offense is defined in the section of the Criminal Code on which the instruction was based and it was not error to give that instruction. The defendant was indicted and prosecuted as a principal under said section 9. In order to charge him as "principal" under that section, it was necessary that he be charged with "procuring, aiding and abetting" the per-

petration of the crime by an officer of the election, under section 8. The act with which he was charged was therefore that of being accessory to the offenses created by section 8, for which he was prosecuted as a principal under section 9.

The final contention of plaintiff in error is that he was deprived of due process of law in violation of the Federal constitution. No reason is pointed out in the brief or argument as to why this is so. If its purpose is that it may be said later that a question is involved arising under the Federal constitution it has served that purpose and no other.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*

FARTHING, WILSON, and GUNN, JJ., dissenting.