(No. 30071.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH KRAZIK, Plaintiff in Error.

*Opinion filed May 22, 1947.*

DARROW, SMITH & CARLIN, and LOUIS A. ROSENTHAL, both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and HARRY A. HALL, State's Attorney, of Waukegan, (DANIEL J. DALZIEL, and JOHN BEDROSIAN, both of Waukegan, of counsel,) for the People.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Defendant, Joseph Krazik, and Walter James Ryall were indicted by the grand jury of Lake county for ob-

taining from John A. Wagner on January 17, 1942, the sum of $1400, by means of and by use of the confidence game. In the same indictment they are also charged with conspiracy to fraudulently obtain from Wagner the sum of $1400. Krazik was apprehended and tried before a jury and found guilty. Ryall was not found. The verdict of the jury was: "We, the jury, find the defendant, Joseph Krazik, guilty of obtaining from John A. Wagner money of the said John A. Wagner, by means and by use of the confidence game, in the manner and form as charged in the indictment." Motion for new trial was overruled, and defendant was sentenced to the penitentiary at Joliet, Illinois.

The defendant makes several contentions, among which are: (1) that finding him guilty of the crime of confidence game, alone, operated as an acquittal of the conspiracy count, and therefore he had been acquitted of a crime embodying the same elements as a confidence game; (2) that the verdict was fatally bad because it did not fully describe the crime of confidence game, and was in the nature of a special verdict; (3) that the identification of the defendant as the criminal was insufficient; (4) that the defendant never obtained the money but that it was obtained by his codefendant; and (5) that there was no element of confidence reposed by the victim, and therefore the judgment finding him guilty of confidence game should not stand.

The facts are substantially as follows: Wagner was standing at a street corner in Waukegan, Illinois, when he was approached by defendant, who asked where he could find a social club. He stated he was a minister's son, and that he had inherited $7000 from a relative and that he was out for a good time. Just then Ryall made his appearance and took in the conversation, and defendant offered Wagner $5 to show him around. Ryall suggested they go to a tavern, where they went and ordered some

drinks. The conversation involved night clubs, women and places of amusement. Defendant appeared to be lavish with his money, took it from his pockets, and seemed to have a lot of it. He was going to bet with Wagner, and when the latter reached in his pocket for a piece of paper he accidentally drew out his bank book, which was in the name of Wagner and his wife. Defendant, Krazik, said he would bet Wagner $5 that he could not draw any money out of the account, and finally raised his ante up to $25, and Wagner decided he would "show him." One of the two men suggested that Wagner go to the bank and see if he could draw out the money. The defendant stayed in the tavern while Ryall and the complaining witness went to the bank, and Ryall stood beside him as he drew out the $1400.

When the money was taken out of the bank it was placed in the bankbook and given to Wagner, and Ryall suggested they return to the tavern, Wagner carrying the money. In the tavern Ryall stated to Wagner that he would show him how to draw out money, and Wagner was foolish enough to hand him the bankbook with the money remaining as it was in the back of the book. Ryall thereupon took the bankbook with the money, and asked if Wagner had a handkerchief, and upon being informed by Wagner that he did not have one, Ryall produced one and handed the same to Wagner, with the statement that it contained the bet and all, and the complaining witness took the handkerchief, thinking it contained the money. There were three men according to the testimony of the complaining witness, one being supposed to be a stakeholder, being described as an onlooker. As soon as the handkerchief was handed to Wagner, Ryall said "let's get out of here." They all walked across the street and agreed to meet at the bank in about ten or fifteen minutes, after the money had been redeposited in the bank. The complaining witness never saw them after that. Wagner did

not open the handkerchief until he reached the bank, and then found a one dollar bill wrapped around a lot of tissue paper, immediately after which he notified the police.

The witness stated he believed the defendant when he said he was a minister's son, and that he had confidence in him from the start. Later the defendant was apprehended in Joliet, identified by the complaining witness, and taken back and tried. The only evidence offered in the case was that of the complaining witness and two officers who were present when defendant was identified, and two alibi witnesses offered by the defendant.

The first point raised is that the acquittal of the defendant on the conspiracy count operated as a bar to conviction on the confidence game count. The same act may constitute different offenses. The first count charged a combination of the defendants to commit a confidence game, and the second count the crime of confidence game. In the instance of acquittal of the defendant on one count of the indictment the verdict does not operate to set aside the conviction on the other count if different offenses are charged. (*People* v. *Allen,* 368 Ill. 368.) It is possible that the defendants might also be guilty of conspiracy to commit the crime, but the fact that the jury acquitted Kazik of that does not mean that the crime of obtaining money by the confidence game was not committed, or that said defendant was not properly convicted of it. *People* v. *Flaherty,* 396 Ill. 304.

It is next urged that the verdict is improper and is insufficient to support the indictment. We have set out the form of the verdict above. It is claimed that this omits some of the essentials of a confidence game in that it fails to find that the defendant "unlawfully, wilfully and feloniously" had obtained money by a confidence game. The cases cited by appellant are to be distinguished. In *People* v. *Lee,* 237 Ill. 272, the verdict of the jury was simply

that the defendant harbored a female under the age of eighteen years in a house of prostitution. This verdict was held insufficient because the word "harbored," used in the verdict, was not contained in the statute, and neither was it found that the defendants were the keepers of the house, nor that complaining witness was unmarried. These are all essentials to the crime. In the other cases cited by plaintiff in error they all, in like manner, were based on a verdict which failed to describe an essential part of the crime.

It is a principle frequently applied by us that the sufficiency of verdicts is not construed with the same strictness as indictments, or other criminal pleadings. (*People* v. *Orlando,* 380 Ill. 107.) In *People* v. *Gold,* 343 Ill. 402, we held a verdict of guilty of "kidnapping for ransom, in manner and form as charged in the indictments," sufficient. In *People* v. *Orlando,* 380 Ill. 107, a verdict that "We, the jury, find the Defendant, Sam Orlando, Guilty of advising, procuring and abetting the falsifying of a poll list, as charged in the indictment," was held to be sufficient. And in considering the same point we held in *People* v. *Norwitt,* 394 Ill. 553, that the law does not require specific repetition, and a verdict or judgment containing a reference to the allegations of an indictment is sufficient. From these late decisions it appears that the distinction between the cases is as follows: If the verdict does not contain all of the substantive elements of the crime, such as those omitted in the *Lee case,* the verdict is insufficient; but if the substantial elements are contained in the verdict and only the words charging that such facts violate the law are omitted, the verdict is sufficient if the acts are said to have been done as charged in the indictment. Here the verdict contained every element of confidence game, and it was proper to refer to the indictment for this charging part, while in the *Lee case* the *facts* necessary to constitute the

crime were not all included, and referring to the charging part of the indictment did not help because it necessarily referred to only part of the elements of the crime.

It is contended the verdict is against the evidence because there was only one witness who identified the defendant, and that the manner of identification was improper. We do not take the same view. Wagner had filed his complaint with the police department, and some time after was advised to come to the office of the department. He was shown two pictures, and immediately identified one of them as that of defendant. He was advised by the police department to study them for twenty-four hours before they went to Joliet, where it was reported the man was in custody. They went to Joliet the next day, and as Wagner and the police officers were in one room the defendant stepped through a door for a moment, and was immediately recognized. He was taken out of the room, and then placed in a line of five people, and was again picked out by the complaining witness as one of the persons who had swindled him the previous January.

The argument seems to be that the showing of the photographs was suggestive of identifying the man who was in jail, but it seems rather convincing that upon seeing the picture Wagner immediately recognized the defendant, and his action later at the jail offered additional proof that he had seen the man before. While this identification in the Joliet police station was not made in the most approved manner, there is no inflexible rule that identification must take a definite course, although in close cases it is advisable to require the complaining witness to pick the defendant from a number of persons.

The testimony of the complaining witness in this case is opposed only by the defense of an alibi. One witness was a friend, who claimed he had seen the defendant in California about January 21, and the other was his sister, who claimed he had called up from California about the middle of

January. The testimony of these witnesses does not exclude the possibility of the defendant not being in California at that time, and this is necessary in order to create a reasonable doubt of guilt otherwise established. *People* v. *Wise,* 379 Ill. 11.

It is contended the crime of confidence game has not been established for the reason that it appears Ryall actually got the money. This is completely answered by the cases of *People* v. *Zurek,* 277 Ill. 621, and *People* v. *Bogue,* 319 Ill. 294. In the *Zurek case* the defendant was one of three persons charged with the confidence game. He was a saloonkeeper, who introduced the complaining witness to another man, with the general idea of making counterfeit money, which would be divided among the three. The stranger made several demonstrations, and obtained several hundred dollars from the victim, but the saloonkeeper, who was tried alone, and who did not make the demonstrations or take any money, was convicted, because he was a party to the crime. And, in the *Bogue case,* we likewise held that a person could be held guilty of the confidence game, even though he received none of the money, if it appeared he acted in consort with the one who did.

It is also contended that, assuming the facts to be true, the crime of confidence game was not committed; that complaining witness thought defendant was a moron, or half-witted, or crazy about women, and could not have relied upon him, or parted with his money by reason of confidence in defendant's statements. The case of *People* v. *Bimbo,* 369 Ill. 618, bears some similarity to this case. There a person was led to believe by a fortuneteller that he would die within a short time if he did not perform certain rituals with money and eggs, as suggested by the defendant in the case, and in the course of a number of visits persuaded the victim to go through other silly and foolish actions of putting money in a package and finding waste paper, resulting in the loss of $700. The same

defense was made, but, after holding that the gist of the crime of confidence game is that of obtaining the confidence of the victim by some false representation or device, we held that the proof showed that, by the artifices used, the defendant induced the confidence of her unwary victim, and, as the result of his misplaced confidence, consummated her swindling operation by obtaining his money. The conviction was accordingly affirmed.

The evidence in the present case shows Wagner was first approached by defendant, later joined by Ryall; that he pretended to have inherited a considerable sum of money, that he was a minister's son, and was relying upon Wagner to point out a place where he could have a good time, and, upon seeing Wagner's bankbook, casually suggested a little bet that Wagner could not draw the money by himself. He succeeded in having the money drawn out through the aid of a person obviously his confederate, and then, through a juggling act, delivered back to the complaining witness a handkerchief containing one dollar and tissue paper instead of $1400. The complaining witness says he believed in him from the start. In order for the complaining witness to draw $1400 from the bank he obviously must have believed that the defendant was worthy of confidence and that it would be safe for him to disclose that he had the power of getting the money, and thus win the $25 bet. The evidence shows he felt he was safe in drawing out his money, and accordingly withdrew and lost the same.

This is sufficient to comply with the law, because, through the confidence he had, he withdrew the money, and by the swindling operation of defendant's confederate he lost it. The fact that the scheme, representation, and means by which these two men induced their victim to draw the money from the bank was silly and childish does not show the victim did not have confidence in them. In fact many cases which come before us show that people are still prone to rely upon tricks and schemes of this kind,

and lose their money, even though to most people it would seem such representations were unworthy of confidence, but one of the reasons the law was enacted is to reach persons who practice their wiles upon the gullible.

We are of the opinion that none of the legal objections raised constitute a defense, and are satisfied the evidence shows the defendant's guilt beyond a reasonable doubt.

The judgment of the circuit court of Lake county is affirmed.

*Judgment affirmed.*