(No. 40420.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ERNEST RHODES, Appellant.

*Opinion filed November 30, 1967.*

John Unger, Public Defender, of Danville, for appellant.

William G. Clark, Attorney General, of Springfield, and John P. O'Rourke, State's Attorney, of Danville, (Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, Ernest Rhodes, was convicted after a jury trial in Vermilion County on a charge of attempt (theft) in violation of section 8—4 of the Illinois Criminal Code and was sentenced to the penitentiary for a term of 5 to 10 years. An appeal has been taken directly to this court from a denial of the defendant's petition for relief under the Post-Conviction Hearing Act.

Previously the defendant prosecuted an appeal to the Appellate Court for the Fourth District alleging that he had been incompetently represented at his original trial and that his conviction was obtained by use of evidence which violated the so-called Eavesdropping Act. (Ill. Rev. Stat. 1965, chap. 38, par. 14—5.) At trial the defendant was represented by counsel of his own choosing, but the attorney did not seek to have the defendant's conviction reviewed. However, subsequently, the Public Defender was appointed to represent defendant, and he secured leave from the appellate court to appeal. The appellate court affirmed defendant's conviction (71 Ill. App. 2d 150) and there was no petition for leave to appeal filed in this court.

Thereafter, defendant filed a petition in the circuit court of Vermilion County seeking relief under the Post-Conviction Hearing Act. After a hearing the petition was denied. The defendant now brings this appeal urging a reversal of the circuit court's ruling, reasserting his claim that his constitutional rights were violated in that evidence was admitted at trial in violation of the so-called Eavesdropping Act, which denied him due process and equal protection of the laws. He also contends that an alternate juror was not discharged prior to the time the jury retired, which resulted in his being denied his right to a proper jury trial; and he asserts that he was improperly sentenced in that the sentence imposed exceeded the statutory limits of punishment for the offense charged.

On August 25 and 26, 1964, Howard Lauhoff received

six telephone calls from an unidentified caller, who stated that he (Lauhoff) had some enemies in Chicago and that the caller and a partner of the caller had been hired to kill him. The caller further stated that for $2500 and $250 expenses they would give Lauhoff the names of the people who had engaged them to kill him and peaceably would leave town. Upon receiving the first call Lauhoff immediately notified the Federal Bureau of Investigation and the local police. Lauhoff attempted to arrange a "drop" plan with the caller so that the caller might pick up the money, but because of the caution and apparent suspicions of the caller a plan was not finally agreed upon until the occasion of the caller's sixth telephone conversation with Lauhoff on August 26. On that date the defendant was arrested upon his appearance by the local police in the vicinity of the proposed "drop".

Later that day Lauhoff heard and identified the defendant's voice through an intercom system in the office of the chief of police of Danville, as the voice of the man who had repeatedly phoned him. The same day at the Vermilion County jail Lauhoff also observed the defendant and several other men through a one-way mirror. The men were placed in a line-up and each man stepped forward and stated his name. Lauhoff identified the defendant's voice as that of his caller.

Lauhoff's telephones had been "trapped," *i.e.*, adjusted by the telephone company so that the place of origin of incoming calls might be determined. The "trapping" revealed that two calls received within twenty minutes of each other, about 2:00 A.M. on the morning of August 26, 1964, had come from the Wabash Railroad Station and a gas station in Danville.

John A. Davis, a ticket agent at the Wabash Railroad Station, testified that he observed the defendant make a telephone call from the railroad station shortly after 2:00 A.M. on the morning of August 26, 1964, and that he

heard part of what the defendant said. What Davis testified that he overheard corresponded to Lauhoff's statement as to what he was told by the telephone caller that morning. Additionally, Davis later that day identified a picture of the defendant as the man he had seen phoning from the railroad station and he also identified the defendant in person at the county jail.

Officers Miller and Jones, who questioned the defendant after he was arrested, testified that he had admitted making calls on the night in question from the Wabash Railroad Station and the Wareco Gas Station. However, the defendant claimed that these calls were placed to his girl friend and to obtain a cab. Officer Jones also testified he had seen the defendant in the immediate area of one of the "drop-offs" proposed at an earlier time. The defendant was convicted on the basis of this evidence.

The defendant contends that his constitutional rights were violated by the transmission of his voice without his consent through the intercom system in the police station in Danville. As related, it was identified by the victim, who was in another location in the station, as the voice of the person who had repeatedly phoned him.

At the time of the trial herein the above procedure could not be said to have been contrary to the so-called Eavesdropping Act. (See *People* v. *Dixon,* 22 Ill.2d 513.) However, following the trial and while this case was on appeal in the appellate court, we declared in *People* v. *Kurth,* 34 Ill.2d 387, in interpreting the Act, that any party who had not consented to the transmission of his conversation might bar its admission in evidence.

The defendant erroneously states that the appellate court held that the introduction of the above evidence at trial was proper. However, the appellate court clearly stated (71 Ill. App. 2d at 150, at 154) : "Kurth renders the eavesdrop evidence in this case excludable and we will exclude it, and then ask ourselves, can the conviction still

stand?" The appellate court concluded that there was sufficient other and independent evidence to affirm the conviction. We deem that this conclusion of the appellate court was proper. The victim had six telephone conversations within a short period of time with the person whom he identified by voice independent of the intercom as the defendant. The ticket agent saw the defendant phoning from the railroad station and what he overheard the defendant say corresponded to what the victim declared the caller said. The defendant admitted making phone calls from the railroad station and from the gasoline station and the "trapping" of the victim's phone demonstrated that calls had been made from the two stations. The defendant was arrested in the vicinity of the proposed "drop". We agree with the appellate court that, absent the evidence complained of, the other and independent evidence was more than sufficient to lead to a conclusion of the defendant's guilt.

The issue presented in *Chapman* v. *California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, is not present, as we judge that the admission of evidence here was not Federal constitutional error. (See *Lopez* v. *United States,* 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381, and *People* v. *Wolfson,* 34 Ill.2d 585.) Nor was it error under the constitution of this State. *People* v. *Kurth,* 34 Ill.2d 387, involved a construction of the statute concerned and not a constitutional problem. Also, see *People* v. *Dixon,* 22 Ill.2d 513, and *People* v. *Wolfson,* 34 Ill.2d 585.

In view of what we have said it is not necessary to consider whether a question properly cognizable under the Post-Conviction Hearing Act was raised by the admission of the evidence relative to the unconsented-to transmission of the defendant's voice. See *People* v. *Wolfson,* 34 Ill.2d 585.

The defendant next argues that the failure of the trial court to discharge the alternate juror before the jury re-

tired to consider their verdict denied him his constitutional right to a proper jury trial.

At the post-conviction hearing the alternate juror testified that she went to the jury room only to obtain her coat before leaving the court room and that she was not in the jury room during any deliberations nor at the time a foreman was picked. No evidence to the contrary was presented and the defendant has not shown wherein he was prejudiced in any way by the incident.

In *People* v. *Ward,* 32 Ill.2d 253, we said at page 259: "\* \* \* the purpose of review in a criminal case is not to determine whether the record is perfect but rather to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond all reasonable doubt."

In *Ward* we held there that the fact that a juror had a courtesy commission as a special deputy sheriff, without a showing of prejudice to the defendant, could be considered only an irregularity and did not require a reversal. Here the fact that the alternate juror was allowed to remove her coat from the jury room could at the most extreme characterization be considered as an irregularity and is not sufficient to require a reversal of his conviction. We find no merit in defendant's contention that his constitutional right to a jury trial was thus infringed.

There is no merit to the defendant's contention that the 5-to-10-year sentence he received was in excess of the punishment authorized.

Section 8—4, the statute under which the defendant was sentenced, provides for a punishment of not more than 14 years for a forcible felony attempt. The sentence imposed was not in excess of punishment authorized. Section 16—1 authorizes a penalty of one to ten years for grand theft. It is urged that due process was denied, as the defendant might have been punished more severely for the at-

tempt than for the completed crime of grand theft. We agree with the People's reply that section 8—4 only provides that the punishment for any forcible felony attempt shall not exceed 14 years and does not provide that the punishment for a given attempt may exceed that provided for the completed crime concerned. The penalty here imposed does not exceed the maximum punishment which could have been given for the completed crime of grand theft.

The defendant's complaint that he should have been charged only with intimidation, which at the time of the events herein related was a misdemeanor, cannot be entertained. The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged.

The defendant's argument that there was no evidence of a threat of physical violence to the victim is not persuasive. The defendant advised the victim that he and another had been hired to kill him but if given $2750 they would leave the city. We deem that, reasonably construed, this was a threat of physical force or violence within the meaning of section 2—8 of the Criminal Code. (Ill. Rev. Stat. 1965, chap. 38, par. 2—8.) The inclusion by the defendant of the illegal condition that he would leave the city if. he were given money, did not alter its character as a threat.

We have not found that the defendant's constitutional rights were violated and accordingly, the judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*