(No. 45634.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. HORACE H. McCOLLOUGH, Appellee.

*Opinion filed May 29, 1974.—Rehearing denied June 28, 1974.*

RYAN, WARD, and GOLDENHERSH, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Joseph Cavanaugh, State's Attorney, of Springfield (James B. Zagel and Charles H. Levad, Assistant Attorneys General, of counsel), for the People.

John L. Knuppel and John Grosboll, both of Petersburg, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

One count of an indictment returned against the defendant, Horace H. McCollough, charged him with involuntary manslaughter; the other charged him with reckless homicide. Both counts recited in identical language that the defendant did "recklessly with a willful and wanton disregard for the safety of *** a five-year-old child, increase the speed of the motor vehicle he was driving *** and failed to exercise due caution to avoid colliding with said child upon the roadway *** and did *** kill [the child] without lawful justification in violation of the Criminal Code of 1961, as amended, Section 9—3." A jury trial was waived and the circuit court found the defendant not guilty of involuntary manslaughter but guilty of reckless homicide, and sentenced him to probation for six months. The Appellate Court, Fourth District, reversed the judgment and held unconstitutional section 9—3(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—3(b)), which defines the offense of reckless homicide. (8 Ill. App. 3d 963, 971.) We allowed the People's petition for appeal as a matter of right pursuant to Rule 317. 50 Ill.2d R. 317.

Section 9—3 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—3) provided:

> "(a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.
>
> (b) If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide.
>
> (c) Penalty.
>
> (1) A person convicted of involuntary manslaughter shall be imprisoned in the penitentiary from one to 10 years.
>
> (2) A person convicted of reckless homicide shall be fined not to exceed $1,000 or imprisoned in

> a penal institution other than the penitentiary not to exceed one year, or in the penitentiary from one to 5 years, or both fined and imprisoned."

Because the reckless driving of a motor vehicle may, if it causes death, be punished either as involuntary manslaughter or as reckless homicide, the defendant contends, and the majority of the appellate court concluded, that the defendant was deprived of due process of law and of the equal protection of the laws. The majority considered that the statute "places within the uncontrolled and unguided discretion of the State's Attorney, the Grand Jury, and in some instances the trial judge or petit jury, the power to impose different degrees of punishment for different persons who commit identical acts under identical circumstances." 8 Ill. App. 3d at 971.

The offense of reckless homicide came into our law in 1949 when the General Assembly added section 146a to Division I of the Criminal Code of 1874. (Laws of 1949, p. 716; Ill. Rev. Stat. 1949, ch. 38, par. 364a.) The added section provided:

> "Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person shall be guilty of the offense of reckless homicide. Any person ·convicted of reckless homicide shall be punished by a fine of not less than one hundred dollars ($100) or more than one thousand dollars ($1,000), or by imprisonment in the county jail for a determinate period of not less than sixty (60). days and not more than six (6) months, or by both such fine and such imprisonment, or by imprisonment in the penitentiary for an indeterminate period of not less than one (1) year or more than five (5) years."

This provision was sustained in 1952 against an attack which was similar to that advanced in this case. In *People v. Garman* (1952), 411 Ill. 279, 285, the court held:

> "It was clearly the intent of our legislature to create a crime of lesser degree than manslaughter in the specific instance of a death occurring from

the act of another while driving 'with reckless disregard for the safety of others.' (See Ill. Rev. Stat. 1951, chap. 38, par. 365.) There is absolutely no reason why the same set of facts may not constitute separate offenses under different statutes. (*People. v. Crane,* 356 Ill. 276; *People v. Koblitz,* 401 Ill. 224.) The plaintiff in error cannot complain because the jury convicted him of the lesser offense where both involuntary manslaughter and reckless homicide are charged. *People v. Carrico,* 310 Ill. 543."

In 1961 the Criminal Code was enacted in the form set out above. The comment of the drafting committee is as follows:

"Section 9—3(b) is designed to indicate clearly that reckless homicide has the same elements as involuntary manslaughter, though relating only to one of the many types of act which may be involved in manslaughter; and that under an indictment for involuntary manslaughter while driving a motor vehicle, reckless homicide may be found as an included offense. The penalty subsection (c)(2) then provides a lesser penalty for reckless homicide, similar to that of the 1961 statute. This seems to be a much simpler method of dealing with the problem than that of using separate sections for involuntary manslaughter and reckless homicide, which would necessitate an explanation of the relationship between them." Smith-Hurd Ann. Stat. (1972), ch. 38, par. 9—3, p. 246.

The defendant concedes that the reckless-homicide provision was valid between 1949 and 1961, saying: "It is to be noted that the 1949 addition of this section to the Code dealt solely with an offense committed with a motor vehicle. Offenses of involuntary manslaughter could and can be committed with all types of instrumentalities, including an automobile. Reckless homicide could and can be charged, as such, only when committed with an automobile. Thus, it was appropriate under separate statutes from 1949 until 1961, to charge the two crimes under separate counts of an indictment as separate

offenses. Both the section on involuntary manslaughter and the section on reckless homicide explicitly and individually characterized the nature of the acts which would constitute the offense to be charged." We are unable to see why the validity of the conviction should turn upon whether the General Assembly has provided for the two offenses in separate statutes, in separate sections of a single statute, as was the case from 1949 to 1961, or in separate paragraphs of the same section, as is now the case.

The contention that the statute grants undue discretion to the prosecutor in determining the offense for which he will prosecute is without merit. With respect to a similar contention, this court said in *People v. Rhodes* (1967), 38 Ill.2d 389, 396, in which the defendant had been convicted of attempted theft: "The defendant's complaint that he should have been charged only with intimidation, which at the time of the events herein related was a misdemeanor, cannot be entertained. The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged." The kind of determination committed to the discretion of the State's Attorney by the statute in this case is the same kind of discretion that is committed to him with respect to a host of other offenses, and is exercised by him every day. It is not, in our opinion, an unconstitutional delegation of authority.

The related contention that the statute is somehow invalid because it delegates authority to a jury or to the trial judge is refuted by our opinion in *People v. Keegan* (1971), 52 Ill.2d 147, which enumerated a number of statutes in which the penalty for the same conduct ranged from confinement in the penitentiary to a fine and stated:

"Defendant argues that the statute gives unguided discretion to a grand jury or a magistrate to determine whether a defendant should be

charged with a misdemeanor or a felony. As demonstrated by the sections above enumerated there are a number of statutes which provide for penalties applicable to felonies and alternatively for penalties applicable to misdemeanors. We have previously held that if the conduct for which a defendant is prosecuted constitutes a misdemeanor under one statute and a felony under another, there is no error in convicting him of the felony. (*People v. Singer,* 288 Ill. 113.) With respect to the discretion to be exercised in determining under which statute the defendant is to be prosecuted, in *People v. Rhodes,* 38 Ill.2d 389, at page 396 we said: 'The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged.' We hold, therefore, that in being charged under section 11—4, although the same conduct could have been the basis of a conviction under section 11—5, the defendant was not denied equal protection of the law." 52 Ill.2d at 153; see also *People v. Parks* (1971), 48 Ill.2d 232.

The General Assembly may well have established the new offense of reckless homicide in 1949 because it determined that in many cases judges and juries were reluctant to convict a defendant of involuntary manslaughter when the reckless conduct that caused death consisted of the driving of a motor vehicle. And it may also have decided that because of the many potential shadings of reckless automobile driving, ranging from that which borders upon willfulness to that which borders upon negligence, the offense of manslaughter, with its more severe penalties, should be retained for the more serious offenses. Such determinations are not unreasonable, in our opinion, and their expression in the statute deprives no one of due process or equal protection of the laws.

The concurring judge of the appellate court would have reversed the conviction on the ground that the trial judge's explicit findings of not guilty of manslaughter, but guilty of reckless homicide were "legally inconsistent." We do not agree with that conclusion either. If the defendant considered himself prejudiced by the separate count charging reckless homicide, he could have moved to dismiss it. He did not do so, and in this situation the finding of guilty with respect to reckless homicide was necessarily an implicit finding of not guilty of the offense of manslaughter. (*People v. Reese* (1951), 410 Ill. 11; *People v. Sobucki* (1944), 387 Ill. 358.) The explicit finding as to that offense was surplusage which could not have prejudiced the defendant. There is no problem in this case of *res judicata* or collateral estoppel.

The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE RYAN, dissenting:

I must dissent since I believe that the majority opinion overrules a principle of law which has been established and followed in prior decisions of this court.

In *People v. Keegan,* 52 Ill.2d 147, *People v. Parks,* 48 Ill.2d 232, and *People v. Rhodes,* 38 Ill.2d 389, this court held that when a defendant's conduct violates more than one criminal statute, *and the statutes contain different elements,* the defendant is not denied equal protection of the laws if he is prosecuted under the more severe of the statutes. Those cases do not, as the majority believes, stand for the proposition that where exactly the same act is punishable under two different statutes the prosecutor may constitutionally elect to prosecute for one rather than the other. It is clear that in these prior cases the statutes involved contained different elements, a fact which the majority overlooks and a fact not present in this case.

In *People v. Keegan,* 52 Ill.2d 147, the defendant, who was convicted of the offense of indecent liberties with

a child (Ill. Rev. Stat. 1967, ch. 38, par. 11—4) argued that since precisely the same conduct was punishable as the misdemeanor offense of contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1967, ch. 38, par. 11—5) he was denied equal protection of the law because other persons committing the same conduct might be prosecuted under the more lenient statute. We rejected that argument, noting that the offense of indecent liberties provided affirmative defenses not available to one charged with the less serious offense of contributing to the sexual delinquency of a child.

*People v. Parks,* 48 Ill.2d 232, involved two sections of the Uniform Drug, Device and Cosmetic Act (Ill. Rev. Stat. 1965, ch. 111½, pars. 445.1 and 445). We noted that although the two sections might overlap in certain instances, they proscribed different types of conduct and required proof of different elements.

Similarly in *People v. Rhodes,* 38 Ill.2d 389, where the defendant contended that he should have been prosecuted for intimidation (Ill. Rev. Stat. 1965, ch. 38, par. 12—6), rather than attempted theft (Ill. Rev. Stat. 1965, ch. 38, par. 8—4), we observed that the statutes contained different elements.

Thus in *Keegan, Parks,* and *Rhodes,* although the defendant's conduct violated more than one statute, the statutes themselves involved either different elements or defenses. The State in such a situation must evaluate the evidence and determine for which offense a conviction is most likely. There are strategic reasons for charging one offense rather than the other. It is precisely this type of determination which the State's Attorney is expected to make, and we quite properly refused to infringe on that discretion. Moreover, the Supreme Court of the United States has indicated that a defendant suffers no deprivation of constitutional rights merely because his conduct violates two separate statutes. In *Rosenberg v. United States,* 346 U.S. 273, 294, 97 L. Ed. 1607, 1619, 73 S. Ct.

1152, 1163, the court stated: "Where Congress by more than one statute proscribes a private course of conduct, the Government may choose to involve either applicable law: '*At least where different proof is required for each offense,* a single act or transaction may violate more than one criminal statute.' [Citations.] " (Emphasis added.)

In the case before us, however, the statutes proscribe exactly the same conduct. Exactly the same evidence which is necessary to prove reckless homicide is also sufficient to convict of involuntary manslaughter. In this setting, the decision to prosecute for one offense rather than the other is in no way dictated by the available evidence or the elements of the crime. I believe that this type of scheme, which allows such a great disparity in the punishment of precisely the same conduct according to the caprice of the prosecutor or grand jury violates the equal protection of the laws.

Nor do I agree with the majority that *People v. Garman,* 411 Ill. 279, is dispositive of this issue. While it is true that *Garman* involved a similar attack upon the then existing Reckless Homicide Act (Ill. Rev. Stat. 1951, ch. 38, par. 364a), in upholding the Act the court noted that involuntary manslaughter and reckless homicide "involve some different elements in their required allegations." (411 Ill. at 285.) This certainly cannot be said of the statutes in their present form.

The majority opinion is contrary to decisions of other jurisdictions which have considered this question. In *Olsen v. Delmore* (1956), 48 Wash. 2d 545, 295 P.2d 324, the Washington Supreme Court held that provisions of the Uniform Firearms Act which gave the prosecutor discretion to charge either a gross misdemeanor or a felony for the same conduct violated the equal protection clauses of the State and Federal constitutions. Similarly, in *State v. Pirkey* (1955), 203 Ore. 697, 281 P.2d 698, a statute which gave a grand jury or magistrate the discretion to choose whether defendant would be charged with a felony

or misdemeanor was held by the Supreme Court of Oregon to violate the equal protection clause. The court stated:

"The statute in question here defines and prohibits a specific act and provides punishment therefor, but there is no semblance of a classification which would enable one to ascertain under what circumstances he may be guilty of a felonious crime, or under what circumstances he may be guilty only of a misdemeanor. So far as the statute is concerned, the same identical act, under the same circumstances, may constitute a felonious crime when commited by one person, and a misdemeanor when committed by another. It might be said that this statute classifies punishments, but does not classify the circumstances to which the diverse punishments are to be applied. This is not legal classification. It is legal chaos." 203 Ore. 697, 704-705, 281 P.2d 698, 702.

The case most similar to this one is *State v. Twitchell* (1959), 8 Utah 2d 314, 333 P.2d 1075. The defendant in that case was convicted of automobile homicide, an offense involving driving while intoxicated and killing another person. There also existed an involuntary manslaughter statute similar to our own. The defendant claimed on appeal that the prosecutor had a choice of prosecuting the same conduct as a felony or a misdemeanor and that this choice violated his right to equal protection of the law. The court noted that such a choice would offend equal protection principles. It held however that since the offense of automobile homicide was created subsequent to the offense of involuntary manslaughter, the legislature intended to exclude it from the offense of involuntary manslaughter. We, of course, cannot interpret section 9—3(b) in a similar fashion because section 9—3 contained both 9—3(a) and 9—3(b) when incorporated into the Criminal Code.

In *Palmore v. United States* (1971), 290 A.2d 573, the District of Columbia Court of Appeals noted that a defendant would be denied equal protection if the identical conduct was punishable by two statutes, one a misdemeanor and one a felony, and if violation of the misdemeanor statute invariably constituted a violation of the felony statute. The court concluded, however, that the statutes did not cover the identical conduct. In this case, of course, commission of reckless homicide invariably involves all the elements of involuntary manslaughter.

I find the reasoning of these cases persuasive and would apply it here to find section 9—3(b) unconstitutional. (See also *Berra v. United States,* 351 U.S. 131, 138-140, 100 L. Ed. 1013, 1020-21, 76 S. Ct. 685 (Black, J., dissenting); *United States v. Beacon Brass Co.,* 344 U.S. 43, 97 L. Ed. 61, 73 S. Ct. 77; *United States v. Coppola* (2d Cir. 1969), 425 F.2d 660.) While I would agree that the General Assembly may constitutionally differentiate between involuntary manslaughter committed with an automobile and other forms of involuntary manslaughter and might further classify different types of conduct involving a motor vehicle, the flaw in the present scheme as I see it is that no such distinctions have been drawn by the General Assembly. Instead it is left to the prosecutor or grand jury to decide which statute is to be applied in each situation. As a result of the absence of statutory classifications of conduct, persons committing precisely the same acts may face different legal consequences, a result which I find repugnant to the principle of equal treatment under the law.

I also disagree with the majority's conclusion that the jury's verdict of guilty on the reckless homicide count is not inconsistent with the not guilty verdict on the involuntary manslaughter count. The law does not require logical consistency between verdicts. (*People v. Hairston,* 46 Ill.2d 348.) It does, however, demand legal consistency. Prior cases finding contemporaneous verdicts of guilty and

not guilty not to be inconsistent involved crimes containing different elements or crimes against different persons. (*People v. Joyner,* 50 Ill.2d 302; *People v. Epping,* 17 Ill.2d 557; *People v. Raddatz,* 403 Ill. 48; *People v. Krazik,* 397 Ill. 202.) Those decisions are not controlling in situations such as the present one where both crimes involve the identical elements. In this case I believe that the acquittal for involuntary manslaughter necessarily involves the finding that the defendant is not guilty of the conduct which must be found present if he is to be convicted of reckless homicide. Consequently, I believe the verdicts are legally inconsistent, and would affirm the appellate court for this reason also.

WARD and GOLDENHERSH, JJ., join in this dissent.