(No. 36307.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT SLEDGE, Plaintiff in Error.

*Opinion filed September 28, 1962.*

WARE ADAMS, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and RUDOLPH L. JANEGA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Albert Sledge, who was jointly indicted and tried with Alvin McDaniel, Robert Morris and Raymond White, was found guilty of armed robbery by a jury in the criminal court of Cook County and sentenced to the penitentiary for a term of five to ten years. He prosecutes this writ of error for review presenting several constitutional claims and also contending that he was not proved guilty beyond a reasonable doubt. In our judgment, however, the only question necessary to be considered is the sufficiency of the evidence to support and justify the conviction, inasmuch as this court will not consider constitutional questions if the case can be decided without doing so. *People* v. *Metcoff,* 392 Ill. 418; *People* v. *Chiafreddo,* 381 Ill. 214.

Late on the night of September 4, 1960, defendant and the complaining witness, Augustus Cosey, who were strangers to one another, met on the street in the "skid row" district of West Madison Street in Chicago. After some conversation they set out in Cosey's car for another part of town to go to a night club suggested by defendant, if Cosey is to be believed, or to seek out a prostitute for Cosey if defendant is to be believed. In any event, after a half hour's driving and while in the vicinity of Clark and Division Streets, Cosey decided he wanted some coffee, drove his car into an alley and parked it, and the two men went across

the street to a restaurant. According to Cosey, after they had been seated a short time defendant remarked: "There is a guy I know," and left the restaurant for about five minutes. At the trial Cosey testified he turned around at this time and saw White standing outside the restaurant; at a preliminary hearing, however, he had testified he didn't look up or see the person to whom defendant referred. The defendant acknowledged that he had left the restaurant for a short period, but said that he had spent the time talking to a taxi driver concerning the locating of a prostitute for Cosey.

Upon leaving the restaurant the two men returned to the car and, just as they entered the front seat, three men, whom Cosey identified as White, McDaniel and Morris, entered the alley. Cosey testified that White walked up to the car and started a conversation by inquiring if the witness was looking for "some fun." When Cosey said he was going home, White drew a knife, placed it against Cosey's head and demanded his money. At this time, according to the complaining witness, defendant reached over, took hold of White's hand and struggled with White for the knife. As this was occurring, Cosey got out of the car but was approached by Morris and McDaniel who rifled his pockets taking a billfold with $8 to $10 in it, a notebook bearing Cosey's name, and a cigarette lighter. At this point a taxi drove into the alley causing White, McDaniel and Morris to run. Cosey testified in one instance that defendant also started to run at this time and that he, Cosey, chased all four men until they entered a subway station on Division Street where he abandoned the pursuit and telephoned the police. Later in the trial, however, and also at the preliminary hearing, he testified that defendant was still in the car when the robbers started to run and that both he and defendant had chased after the men.

Defendant testified that he had grabbed the hand of the robber threatening Cosey, that he was struck from

behind and stunned, that $3 was taken from his shirt pocket, that he joined Cosey in the pursuit and that he had gone into the subway station looking for the men.

Louis L. Smith and Ira L. Saddler, security officers for the subway system, were in the station at this time making a routine check. Smith testified he saw four men, identified as White, McDaniel, Morris and defendant, come "stampeding" down the stairs, that they "huddled" together under the stairs and that, as he was watching, McDaniel threw away a notebook. At the preliminary hearing Smith made no mention of a "huddle" but stated only that McDaniel had thrown the notebook away after "barrelling" down the stairs. Smith testified he picked up the notebook, which bore Cosey's name, went upstairs where he ascertained that "the men" had come through the turnstile without paying fares, then returned to place "him" under arrest. He said when he and his partner exhibited their badges the men broke and ran in all directions until the officers drew their pistols and placed the men in handcuffs.

Defendant, who related that he had met Morris at the corner of the subway and had walked down the stairs with him not knowing if he was one of the robbers, testified that one of the security officers had walked up with a drawn pistol wanting to know which of them had not paid their fare, and that the other officer then came up with White and McDaniel in custody. After this all four were handcuffed and when defendant sought to explain that he had been the victim of a robbery and that he had come into the station looking for the robbers, Smith replied the matter would be straightened out.

About this time city police arrived at the station and took custody of the four men. Cosey, who was present, testified at the trial that he then identified all four men as those who robbed him. At the preliminary hearing, to the contrary, he testified he had never "blamed" defendant "for holding me up."

While it is the province of the jury to pass upon the question of guilt or innocence of an accused in the first instance, it is the duty of this court to carefully examine the evidence and if, after doing so, there remains a serious and well founded doubt of a defendant's guilt, the conviction must be reversed. (*People* v. *Gair,* 379 Ill. 458; *People* v. *McMahon,* 254 Ill. 62.) In our opinion the evidence in this record fails to show, beyond a reasonable doubt, that defendant was a participant in the robbery and is therefore insufficient to support the judgment of conviction. The admitted fact that defendant grappled with White, as well as the discrepancies between Cosey's trial and pretrial versions of essential and important connecting facts, leaves the evidence in the record far short of having the clear and convincing character required to establish guilt beyond a reasonable doubt.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*