(No. 43534.—■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ROBERT FLEMING, Appellant.

*Opinion filed November 30, 1971.—Rehearing denied Jan. 27, 1972.*

HOWARD T. SAVAGE, of Chicago, (HOWARD O. EDMONDS, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and THEMIS N. KARNEZIS, Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Robert Fleming, a police officer of the city of Chicago, was found guilty after a bench trial of soliciting and receiving a bribe and of official misconduct. He was sentenced to five years probation, with the first six months to be served in the House of Correction under the work release program. He has appealed to this court from the judgment of the circuit court of Cook County.

On October 9, 1969, the defendant appeared in the office of Dr. Joseph E. King, a physician, and asked him to identify some pills which he said he had taken from a teenager two weeks earlier. The defendant told King he had been informed by the teenager that he had gotten the pills two weeks before from Dr. King. King identified the pills as desputal, a drug used in dieting, and stated that he had not written a prescription for the drug in the preceding three months.

The defendant then, according to King's testimony, asked him for $600 in consideration of the defendant's not filing a complaint charging the physician with unlawfully prescribing a dangerous drug. King testified the defendant told him that he had "three superiors to take care of," and that it would cost King $200 for each of them. After discussion, Fleming agreed to accept $450, King said, which King was to have for him later that afternoon.

After the defendant had left, King called his attorney, George Adams, and advised him of the incident. Adams went to the physician's office, and he and King began to record the serial numbers of the currency King had in his possession. They recorded the numbers, however, of only some of the notes. King then telephoned the Internal Inspection Division of the Chicago Police Department, and was advised to detain the defendant until officers from that unit came to his office. When the defendant returned, King gave him $49, and, to detain him, told the defendant that his brother was on the way with the balance of the money.

When the defendant returned Adams testified that he left King's office to search for a police officer, and that he stopped a squad car driven by Sergeant Juan Gomez. Adams returned to the office with Sergeant Gomez and they were admitted by Dr. King. King testified that the defendant was not in his range of vision when he opened the door for Adams and Gomez. Upon entering the office, Gomez searched the defendant and took his revolver from him but did not find the $49. When Gomez demanded to know where the currency was, the defendant pointed it out in a closet in the office. The defendant testified that there had been a search for the currency and that he observed it resting on a box in the closet. Three of the recovered notes bore serial numbers which had been recorded by King and Adams. Adams and King testified, too, that after Sergeant Gomez and Adams entered the office the defendant asked in substance whether the matter couldn't be "straightened out" without a lot of trouble. King then told the defendant that the Internal Inspection Division of the police department had been notified.

Fleming denied that he had demanded or received any bribe from Dr. King. He testified he went to King's office to determine the type of pills he had taken from the teenager and to learn whether the doctor had prescribed them. He acknowledged that he made no report of seizing the pills and that he did not inventory them. He testified that he had told a sergeant of the incident but was unable to recall his name.

The defendant has three complaints of error. First, he says he was entrapped into committing the offenses by Dr. King. Without citation of any authority, he argues his conviction of the offenses was in violation of his right to due process in that our statute (Ill.Rev.Stat. 1969, ch. 38, sec. 9—12) recognizes the defense of entrapment only when the incitement to commit the crime has been by a

public officer or employee. Second, the incompetence of his trial counsel, manifested principally by his failure to seek to raise the defense of entrapment, deprived him of his constitutional right to effective assistance of counsel. Third, he was not proved guilty beyond a reasonable doubt of bribery and official misconduct.

The defense of entrapment, of course, may not be raised for the first time on appeal. *(People v. Outten, 13 Ill.2d 21; People v. Redding, 28 Ill.2d 305.)* The failure to raise the question in the trial court will be regarded as a waiver of it. To avoid this consequence the defendant in a familiar argument says that the question was not raised because of his trial counsel's incompetence. Fatally embarrassing to this position, however, is the logically required rule that one may not at once deny the commission of the offense and claim entrapment. *(People v. Anthony, 28 Ill.2d 65; People v. Realmo, 28 Ill.2d 510.)* Here the defendant denied soliciting or receiving a bribe. He could not also admit the crimes and attribute them to King's instigation. Obviously entrapment could not be pleaded. That trial counsel did not attempt to offer the defense reflected professional appreciation, surely not incompetence. No question of entrapment having been available to the defendant, we need not consider his challenge to the constitutionality of our statute. We will not entertain constitutional questions if the cause can be determined on other grounds. *Exchange National Bank v. Lawndale National Bank, 41 Ill.2d 316, 321.*

We would add parenthetically that the record in no way suggests that Dr. King induced the commission of the offenses, so as to make available, under any rationale, the defense of entrapment. This court has said: "[E]ntrapment can exist only when the criminal intent originates in the mind of the entrapping officer, and if such intent arose in the mind of the accused there is no entrapment, though officers may afford an opportunity for the commission of the offense and use artifice and strategem to apprehend

one actually engaged in a criminal enterprise." *People v. Outten, 13 Ill.2d 21.*

We consider there is no basis to the defendant's claim that he did not at trial have the effective assistance of counsel. Where, as here, an accused has retained counsel of his own choice this court has observed: "[H] is judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest skill or for the reason that it might appear, in looking back over the trial, that he had made some tactical blunder. [Citations.] This court has said that ordinarily a defendant who retains counsel of his own selection is responsible if that counsel does not faithfully serve his interests; that any other rule would put a premium upon pretended incompetence of counsel, for if the rule were otherwise, a lawyer with a desperate case would have only to neglect it in order to insure reversal or vacation of the conviction." *(People v. Stephens, 6 Ill.2d 257, 259.)* Thus, a defendant will not, unless the representation was so inadequate as to reduce a proceeding to a farce *(People v. Nelson, 42 Ill.2d 172),* be heard to complain of his retained counsel.

Here, as we have said, trial counsel's not presenting any entrapment claim showed legal understanding. The defendant also claims that the attorney displayed ineptitude in the direct examination of the defendant and in the cross-examination of a prosecution witness. A review of the record, however, does not convince that what the defendant now condemns as error were not simply tactical decisions by counsel in this bench trial.

The contention that the defendant was not proved guilty beyond a reasonable doubt does not persuade. There were conflicts in evidence to be sure, but, if believed, the prosecution's evidence was clearly sufficient to demonstrate guilt beyond reasonable doubt. What we said in *People v. Walcher, 42 Ill.2d 159, 165,* is applicable here: "This having been a bench trial, it was for the trial court to determine the weight and credibility of testimony and

make a finding as to whether the guilt of the accused had been established. Its judgment should not be set aside unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. The evidence is not unsatisfactory in this regard. *People v. Davis, 14 Ill.2d 196.*"

For the reasons given the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*