The People of the State of Illinois, Plaintiff-Appellee, *v.* Horace H. McCollough, Defendant-Appellant.

(No. 11776; )

Fourth District—December 27, 1972.

TRAPP, J., specially concurring.

John L. Knuppel and Homer J. Tice, both of Petersburg, for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Arthur J. Inman, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendant-appellant, Horace H. McCollough was charged, in a two-count indictment, with the crimes of involuntary manslaughter and

reckless homicide. There was no severance and he was tried on both counts of the indictment in a bench trial, at the conclusion of which the trial judge found the defendant not guilty of involuntary manslaughter but guilty of reckless homicide and admitted the defendant to probation for a period of six months. Defendant appeals from the conviction.

Count II of the indictment reads as follows:

> "Horace H. McCollough committed the offense of Reckless Homicide in that he did then and there recklessly with a willful and wanton disregard for the safety of Evan R. Lloyd III, a five-year-old child, increase the speed of the motor vehicle he was driving as he proceeded southbound approaching the intersection of MacArthur Street and Laurel Street, Springfield, Illinois, in violation of his duty to decrease speed when approaching an intersection; and at a time when special hazard existed with respect to pedestrians, to wit: a group of children gathered by the southwest corner of the said intersection at a crosswalk, said special hazard imposing a further duty to reduce speed of his said motor vehicle; and failed to exercise due caution to avoid colliding with the said child upon the roadway at the said intersection, and did collide with the said child; and did then and there kill the said Evan R. Lloyd III, without lawful justification, in violation of the Criminal Code of 1961, as amended, Section 9—3, and against the peace and dignity of the same people of Illinois."

Count I of the indictment was verbatim with Count II except in the opening sentence of Count I the words "offense of involuntary manslaughter" appear where the word "offense of reckless homicide" appear in the opening sentence of Count II.

The defendant urges that the judgments of the Court are fatally inconsistent, that the evidence did not establish defendant's guilt beyond a reasonable doubt and that "* * * having been *first* found not guilty of involuntary manslaughter the defendant was placed in double jeopardy since the judgment of not guilty did not at the same time find him guilty of reckless homicide."

■■ Defendant's argument that he was placed in double jeopardy seems to be founded upon the premise that the trial judge in making his findings, first pronounced defendant not guilty on Count I of the indictment and then pronounced the defendant guilty on Count II. Had the counts been severed and tried separately there would have been merit to this contention. Under the authority of *People v. Hairston*, 46 Ill.2d 348, 357, 263 N.E.2d 840, the single, simultaneous prosecution here "* * * forecloses any claim of exposure to double jeopardy".

We have examined the record and, while the evidence is, on some points, in conflict, it is sufficient to support defendant's conviction of reckless homicide. Since we reverse on other grounds it would unduly prolong this opinion to detail the testimony.

The question of the constitutionality of ch. 38, sec. 9—3 Ill. Rev. Stat. 1971, was not raised in the trial court nor in the briefs in this Court. We reach the question as to whether or not the statute under which defendant was convicted is unconstitutional under the doctrine of plain error now embodied in Supreme Court Rule 615(a). The provisions of the statute are as follows:

"Sec. 9—3. Involuntary Manslaughter and Reckless Homicide. (a) A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly.

(b) If the acts which cause the death consist of the driving of a motor vehicle, the person may be prosecuted for reckless homicide or if he is prosecuted for involuntary manslaughter, he may be found guilty of the included offense of reckless homicide.

(c) Penalty.
(1) A person convicted of involuntary manslaughter shall be imprisoned in the penitentiary from one to ten years.
(2) A person convicted of reckless homicide shall be fined not to exceed $1,000 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or in the penitentiary from one to five years, or both fined and imprisoned."

In our view the question posed by the statute is whether or not the unilateral choice, bestowed upon the State's Attorney and the Grand Jury between duplicative statutes is constitutionally proscribed by the equal protection clause of the 1970 Constitution of the State of Illinois, Article I, Sec. 2, and whether it is so vague with reference to the applicable penalty as to constitute a denial of due process.. Also involved is the choice, under certain circumstances (as exemplified here) given to the petit jury or the trial judge. *Ughbanks v. Armstrong,* 208 U.S. 481, 28 S.Ct. 372, 52 L.Ed. 582, holds that the Fourteenth Amendment prohibits discrimination by the States against persons or classes in criminal cases, and we take it that *Griffin v. Illinois,* 351 U.S. 12, stands for the proposition that the Equal Protection clause of the Federal Constitution is applicable to penal statutes.

In reaching the question of the prosecutors' discretion we are not un-

aware of the practical and legal considerations with which they are daily confronted in decisions to prosecute or not to prosecute, the judgment and discretion exercised in the process of negotiating pleas, etc., but it seems to us that we are not here concerned with those kinds of judgments and that kind of exercise of discretion.

■■ Section 9—3(a) defines the offense of involuntary manslaughter, and the penalty prescribed is one to ten years in the penitentiary. Section 9—3(b) defines the offense of Reckless Homicide and by reason of its penalty provisions is a misdemeanor. *People v. Bain*, 359 Ill. 455, 470; *People v. Spector*, 28 Ill.2d 554, 192 N.E.2d 926.

■■ It is perfectly clear that in the factual setting of this case, and in all others where a defendant is charged with the reckless killing of another while driving a motor vehicle, that the offenses defined in sub-pars. (a) and (b) of Section 9—3 are entirely duplicative, not overlapping, but duplicative in the strictest and most literal application of the term. The only distinction being that one is a felony, the other, a misdemeanor, and the penalties substantially different. Whenever an individual while driving a motor vehicle, recklessly causes the death of another, there could never be a case where evidence sufficient to convict of reckless homicide would not be sufficient to convict of involuntary manslaughter, nor in such case, could there ever be a circumstance in which the evidence sufficient to convict of involuntary manslaughter would be insufficient to convict of reckless homicide. Not one additional fact is required to be established, under the statute, to "elevate" the misdemeanor reckless homicide to the felony involuntary manslaughter, nor will one *less* fact de-escalate the felony involuntary manslaughter to the misdemeanor reckless homicide. The elements of the offenses are precisely the same, and this is apparent, not only from a reading of the statute, but the Committee notes appended:

> "*Section 9—3(b) is designed to indicate clearly that reckless homicide has the same elements as* involuntary manslaughter * * * To the extent that reckless homicide becomes a lesser included offense of involuntary manslaughter, Sec. 10—3(b) [Sic Sec. 9—3(b)] changes the present law. The double-jeopardy rule would apply to the situation in which the defendant (1) is charged only with involuntary manslaughter and is acquitted thereof without a conviction of reckless homicide; or (2) is charged only with reckless homicide and is acquitted thereof. *This result seems logical, in view of the identity of the facts involved and the elements to be proved.*" (Emphasis added.)

Sec. 9—3(b) of the statute defines specific conduct (*i.e.* the reckless killing of another while driving a motor vehicle), makes it a misdemeanor

and prescribes penalties. Engaging in that specific conduct is also a violation of Sec. 9—3(a) of the statute which makes the identical conduct a felony and imposes a different penalty. The *policy* underlying Sec. 9—3(b) is set forth in the Committee comments as follows:

"The problem of the reckless motorist, whose offense technically comes within the definition of involuntary manslaughter but whom a jury hesitates to convict, presumably because of the opprobrium which attaches to a felony and to the word 'manslaughter', and because of the severe penalty provided for manslaughter, has been treated in a number of states by enacting a special provision, in either the criminal code or the motor vehicle act, concerning reckless or negligent homicide by driving a vehicle, and prescribing a misdemeanor penalty, either alone or as an alternative to a penitentiary penalty."

Thus the State has a choice. When the illegal act sought to be punished is the reckless killing of another while operating a motor vehicle, it may charge if it chooses, only reckless homicide, in which event the defendant upon conviction may be fined $1,000 *or* he could be imprisoned for a day, a week, a month or for any other period in the county jail not to exceed one year *or* he could be imprisoned in the penitentiary with a maximum sentence of five years, *or* he could be both fined or imprisoned or both or he could be admitted to probation. The State could also, if it chose, elect not to charge reckless homicide, but rather to charge involuntary manslaughter under sub-par. (a) of the statute and if convicted the defendant could be 1) admitted to probation *or* sentenced to the penitentiary with the maximum term of 10 years. There is yet a third choice, and this is one expressly permitted the trier of fact, be it judge or jury. If the State has chosen to charge the defendant with involuntary manslaughter the trier of fact may find him guilty of that offense, or as the statute provides, "* * * he may be found guilty of the included offense of reckless homicide." The statute unmistakably gives the State the right to choose whether it will prosecute for a felony or for a misdemeanor, and gives the trier of fact, under the circumstance last noted, a choice to convict for either, when precisely the same acts and elements are present in both offenses, and when the penalty provisions are greatly different. There is no statutory provision or guideline which establishes under what conditions or circumstances the choices are to be made, and since the offenses are identical except in name and penalty, it would be impossible to prescribe any guidelines. If the State's Attorney makes a choice and seeks indictment on either paragraph of the statute, it is no doubt an effective election. But suppose he presents evidence to the Grand Jury and thus permits it the choice? In a nonpartisan proceeding, having heard

only the State's witnesses and with no statutory guidelines to govern its decisions, the Grand Jurors make an election, predicated, not on reason or law, but unrestricted discretion or perhaps whim or caprice. If still another choice is made by the State, *both* involuntary manslaughter and reckless homicide may be charged, and the petit jury may, if *it* chooses, convict of involuntary manslaughter or reckless homicide. Again what guides its choice? Nothing in the statute, nothing in the instructions of the Court and, again, nothing but discretion totally unrestricted and exercised in a vacuum so far as any legal restraints are concerned. Additionally, Sec. 9—3, when applied to one charge with a reckless killing while driving a motor vehicle, seems so vague as to the applicable penalties as to offend the requirements of due process. In the instant case, for example, the defendant was unable to ascertain the penalties to which he was subject until *after* trial.

While there may be others, we are presently aware of only one other instance in the laws of this State, where prosecutorial choice predicated upon the same conduct and elements has so drastic an effect upon penalty. Ch. 38, Sec. 31—6, Ill. Rev. Stat. 1971, provides that a person convicted of a felony who escapes from any penal institution shall be imprisoned in the penitentiary one to ten years, while a person convicted of a misdemeanor who escapes from any penal institution shall be imprisoned in a penal institution other than the penitentiary not to exceed one year. By way of contrast, if prosecuted under the provisions of Ch. 108, Sec. 121, Ill. Rev. Stat. 1971, a prisoner escaping from the penitentiary (whether there incarcerated for conviction of felony *or* misdemeanor) is declared guilty of a felony and shall be imprisoned in the penitentiary one to ten years and the sentence *must* be imposed to run consecutively to the one he was then serving.

In *Delmore v. Washington,* 295 P.2d 324, the Supreme Court of Washington construed certain sections of the Uniform Firearms Act to vest in prosecuting officials the discretion to charge for either a gross misdemeanor *or* a felony, which choice it held to violate the equal protection clauses of both the State and Federal Constitutions, and this because the act prescribed different penalties or different degrees of penalties for the same act committed under the same circumstances by persons in like situations, the *Delmore* Court cited, in support of its ruling, *State v. Pirkey,* 203 Or. 697, 281 P.2d 698. In *Pirkey,* the defendant was charged, in an indictment by the grand jury, with drawing a check with insufficient funds in the bank to cover it and that he did so with intent to defraud. The statute delegated to the grand jury or magistrate the power to determine whether to charge the defendant with a felony or misdemeanor. The Court held "* * * the provision of the

statute which purports to vest in a grand jury or magistrate the unguided and untrammeled discretion to determine whether a defendant shall be charged with a felony or a misdemeanor, is unconstitutional" and found additional constitutional infirmities in that "We see in this statute no provision whereby one charged with a misdemeanor could be sentenced as for a felony, however, heinous the offense might after trial appear to have been. Again, if the defendant is proceeded against as for and convicted of a felony, there is no provision authorizing the court in its informed discretion to impose punishment as for a misdemeanor, however strong the evidence in mitigation might be. In our opinion such a statute, so construed would not only violate the Equal Protection Clause and constitute an unauthorized delegation of discretionary power, but it would constitute an invalid encroachment upon the function of the courts whose prerogative and duty it is to determine, not only guilt, but punishment, upon judicial inquiry, after public trial and within the maximum and minimum limits prescribed by the legislature."

In *State v. Twitchell*, 8 Utah 2d 314, 333 P.2d 1075, the defendant was convicted of automobile homicide, a felony. The statute under which he was convicted provided, in essence, that a person who, while intoxicated, caused another's death when driving in a reckless manner was guilty of this offense. A separate statute defined the crime of involuntary manslaughter as the unlawful killing of another without malice during the commission of an unlawful act not amounting to a felony. The defendant urged, on appeal, that the prosecutor was thus given a choice, under identical facts, to make a discriminatory choice whether to charge the felony, automobile homicide, or the misdemeanor, involuntary manslaughter in violation of his constitutional right to equal protection of the laws. The court stated that "We agree that this may tend to deny to defendant and others in his class equal protection of the laws, if the same identical facts may be used in prosecutions under two completely integrated statutes, one a misdemeanor and the other a felony." The court then held that offenses of involuntary manslaughter and the automobile homicide were set forth in separate statutes, that the automobile homicide statute was the last pronouncement of the legislature in point of time that the two statutes were irreconcilable and that automobile homicide was therefore *excluded* from the offense of involuntary manslaughter. *Twitchell* is distinguishable. Two statutes were there involved and the provisions of par. (b) of Sec. 9—3 is not a "last pronouncement" of the legislature in point of time since 9—3, when incorporated in the Criminal Code, contained both pars. (a) and (b). The provisions of Sec. 9—3 also make it plain that reckless homicide is *not* excluded from involuntary manslaughter. Additionally Sec. 9—3 and the Committee Comments explicitly

makes it impossible to derive a legislative intent that all reckless killings committed while driving a motor vehicle *must* be prosecuted under Sec. 9—3(b) of the statute.

In *Berra v. United States* (1956), 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 defendant was charged in a three count indictment with filing fraudulent income tax returns violation of 26 U.S.C., Sec. 145(b). He urged, on appeal, that the evidence required to establish the violation was identical to that required to establish violation of Sec. 3616(a) of the Internal Revenue Code which provided for a lesser penalty. He argued that the indictment under 145(b) must be taken as also embracing a charge under 3616(a) and that the jury should have been permitted the choice between the two offenses. The trial judge had refused a tendered instruction which would have permitted the choice. The equal protection issue involved in prosecutorial discretion was not urged on this appeal. The court held that "The *only* question before us is whether the jury should have been allowed to decide whether it would apply Sec. 3616(a) rather than Sec. 145(b), and that we hold was not for the jury" since the role of the jury in a Federal criminal case "* * * is to decide only the issues of fact, * * *". Justice Black, with whom Justice Douglas joined, dissented. The dissenters would have reached the constitutional issue of equal protection of the law under the doctrine of plain error, saying "The government's whole argument reacts upon the stark premise that Congress has left to the district attorney or the attorney general the power to say whether the judge and jury must punish identical conduct as felony or as a misdemeanor, * * * of course it is true that under our system Congress may vest the judge and jury with broad power to say how much punishment shall be imposed for a particular offense. But it is quite another to vest such powers in a prosecuting attorney * * *. The government's contention here also challenges our concept that all people must be treated alike under the law. This principle means that no different or higher punishment should be imposed upon one than upon another if the offense and the circumstances are the same."

We view the holding in *Berra* to be very narrow: in a Federal criminal case the jury decides only issues of fact. We do not deem our decision here to be in conflict with that rule. Parenthetically, we note that in *Berra* the Circuit Court of Appeals had held, in affirming defendant's conviction, that Sec. 3616(a) did *not* apply to income tax returns but before the Supreme Court both the government and defendant agreed that it *did,* and in its decision the Court adopted that construction *arguendo.* Subsequently in *Achilli v. United States,* 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed. 918, reh. den. 354 U.S. 943, 77 S.Ct. 1391, 1 L.Ed.2d 1540 the court held that Sec. 3616(a) did *not* apply to income tax returns.

In *Hutcherson v. United States* (1965), 345 Fed.2d 694, the defendant had been sentenced to ten years for a narcotics violation. The defendant urged that he was "entitled" to be prosecuted under the D.C. Code since the penalty was less severe and that this was a denial of due process. Three opinions were filed in *Hutcherson*. Judge Miller delivered the opinion of the court, Judge (now Chief Justice) Burger wrote a concurring opinion and Judge Bazelon wrote an opinion concurring in part and dissenting in part. The rule of the case in *Hutcherson* is not easy to discern. The issue of equal protection was not raised, nor did Judge Miller discuss it. Judge Burger felt the court was precluded from reaching the question under the doctrine of plain error by reason of the holding in *Berra*, while Judge Bazelon felt the court was not so precluded and he would have remanded for the purpose of determining whether the administrative rules which had been promulgated to guide the United States Attorney had been followed. We do not view *Hutcherson* as dispositive of the issues here.[1]

An individual may commit involuntary manslaughter in many ways other than by driving a motor vehicle, it is only when the alternatives incorporated by the inclusion of the offense of reckless homicide are introduced into the statute that the problems are created.

For the reasons above indicated we held that par. (b) of Sec. 9—3 violates the Equal Protection guarantees of the Constitution of this State in that its inclusion in Sec. 9—3 of the Criminal Code in that it places within the uncontrolled and unguided discretion of the State's Attorney, the Grand Jury, and in some instances the trial judge or petit jury, the power to impose different degrees of punishment for different persons who commit identical acts under identical circumstances.

Defendant's convictions, having been predicated upon a portion of the statute here declared to be unconstitutional, is reversed.

Judgment reversed.

CRAVEN, P. J., concurs.

---

[1] In *Palmore v. United States*, 290 A.2d 573, the defendant was convicted in Superior Court of the District of Columbia of carrying a dangerous weapon after having sustained a prior felony conviction. One of his contentions on appeal was that he had been denied equal protection of the law because he was not prosecuted under the "first offender-misdemeanor" clause of the District of Columbia Code. The District of Columbia Court of Appeals rejected this contention because the two statutes in question did *not* proscribe the *identical* conduct, and said that equal protection would be denied *only* if the violation of the misdemeanor clause *invariably* constituted a violation of the felony repeater clause of the other statute.

*Cichos v. Indiana*, 385 U.S. 76, deals with two separate statutes involving the general problem discussed in this opinion. The only issue before the court was one of double jeopardy. *Cichos* did not decide the issues of due process or equal protection.

Mr. JUSTICE TRAPP specially concurring:

I concur in the conclusion that the judgment of conviction for reckless homicide must be reversed, but suggest that it is unnecessary to hold that Ill. Rev. Stat. 1969, ch. 38, par. 9—3(b), is unconstitutional for want of due process and denial of equal protection of the law. It is the established policy of our courts to consider and determine constitutional issues only when necessary to a determination of the case. (*People v. Sledge*, 25 Ill.2d 403, 185 N.E.2d 262; *People v. Fleming*, 50 Ill.2d 141, 277 N.E.2d 872.) Since the constitutional issues are only reviewed upon the court's suggestion of plain error, it seems appropriate to recall such policy.

The principal opinion makes quite clear that within the language of par. 9—3(b), the elements of the respective offenses of involuntary manslaughter and reckless homicide are identical and that the proof which would suffice to convict for one offense would equally support conviction of the other. Upon such premise, the judgment of not guilty of the offense of involuntary manslaughter is "legally inconsistent" with the finding of guilty of reckless homicide. (*People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840; *People v. Joyner*, 50 Ill.2d 302, 278 N.E.2d 756.) The opinion in *Hairston* quotes the language:

> " 'In law there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' "

It being apparent, as developed in the principal opinion, that there are, in fact, no "different elements" in the two offenses here charged, these verdicts are necessarily inconsistent.

*Hairston* suggests that the inconsistent verdicts would require a new trial upon all counts. It appears, however, that a new trial upon the charge of involuntary manslaughter would not be permitted by the rule in *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, and *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300.

A remandment and new trial upon the single charge of reckless homicide would seem to come necessarily within the operation of the doctrine of "collateral estoppel" stated in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, in that through the final judgment of not guilty of involuntary manslaughter it has been determined as an ultimate fact that defendant did not recklessly and willfully drive his automobile in such manner as to cause death.

The verdicts being inconsistent in the legal sense, and a new trial upon the charge of reckless homicide being barred through collateral estoppel as a form of double jeopardy, the conviction must be reversed.