THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN ERNEST LONZO, Defendant-Appellant.

(No. 58212;

First District (1st Division)—July 1, 1974.

Paul Bradley and Allen L. Wiederer, both of the State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Alan W. Brothers, and Daniel F. Murray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After trial by jury, John Ernest Lonzo (defendant) was found guilty of armed robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) He was sentenced to a term of 6 to 10 years. He appeals.

Two briefs have been filed in behalf of defendant; one by a private attorney and another by the State Appellate Defender. Two responses have been filed by the State's Attorney. A reply brief has been filed for defendant by the Defender. It appears from these various briefs that defendant contends he was not proved guilty beyond a reasonable doubt; it was error to permit testimony of a witness, now deceased, to be read to the jury at a preliminary hearing; improper conduct of the prosecutor in cross-examination and final argument was reversible error and the sentence is excessive. The State contends that defendant was proved guilty beyond a reasonable doubt; a transcript of the previous testimony by the deceased witness was properly read; cross-examination of defendant and final argument by the prosecutor were not improper and no abuse of discretion appears from the sentence.

The subject of the alleged armed robbery was a small grocery store operated by two elderly people: Richard Martin, now deceased, and his wife, Beatrice. Mrs. Martin testified that on Saturday, November 20, 1971, at about 6:30 or 6:45 P.M., two men entered the store. One of them, later identified by her in court as the defendant, was carrying a gun with "two big noses", or a shotgun. He was in front of the counter. They asked for cigarettes and then announced "a stickup." Defendant told her to empty the cash register "real fast." The other man held a gun to her husband and forced him to lie down and took money from his pocket. At that time, defendant was 3 or 4 feet from her. Both men were in the store from 4 to 5 minutes. Defendant was in front of the counter for 3 or 4 minutes. Defendant took the contents of the cash register and both then left.

This witness did not recall if she or her husband had spoken to the police that day. She did not see the store clerk, a student named James McCullum, speaking to the police that day. However she did remember giving a police officer a description of the defendant. She did not recall the name of this officer or whether he was black or white. She stated, "I don't know one police from another." She and her husband had operated the store since 1960 but she had never seen defendant in the store before. She also testified on cross-examination that she could not

recall if the robbery took place at 6:15 or 6:45 nor could she say what clothes defendant wore at the time of the robbery or what he wore when she next saw him.

On January 2, 1972, she was looking out of her window and saw defendant helping to change a tire on an automobile close to the store. She called the police and they responded. The police went upstairs to one of the apartments next door and brought the defendant down. Before the grand jury, in response to a leading question, she testified that the day on which she next saw defendant after the robbery was January 22, 1972.

James McCullum testified that he was 18 years old and a high school student. He worked part-time at the grocery store after school and on weekends. On November 20, 1971, at about 6:30 or 6:45 P.M., two men came in. One asked for a pack of Kool cigarettes. The witness served him and he announced "a stickup." He identified defendant as being one of the men. Defendant put a sawed-off shotgun on the counter and said, "Empty up the cash register." The other intruder had a silver pistol. At that time, the witness was some 3 feet away from defendant. The other man pushed Mr. Martin down to the floor and took his money. The two men then ran out of the door. James McCullum has worked in the store for 4 or 5 years and never saw defendant before. He described the defendant as being light complected. He did not recall seeing the police at the store that day. He did not remember whether he had testified before the grand jury that defendant was armed with a pistol and the other man with a shotgun.

Police Officer A. C. Goodwin testified that he was summoned to the grocery store on November 20, 1971. He spoke to Mr. Martin, Mrs. Martin and James McCullum. Mr. Martin gave him a general description of the robbers which was included in his report. Both were male persons of the Negro race, some 20 years of age, about 6 feet tall. One had black bushy hair, medium complexion and wore a black corduroy coat of three-quarter length. The other was dark in complexion and wore a black so-called "maxi" coat. The witness had no further conversation with any of these persons at any later date. At the request of his own counsel, defendant stood up in court. The witness testified the defendant's height was 6 feet or 6 feet 2 inches.

Police Officer John Moore testified that on January 2, 1972, in response to a telephone message, he went to the Martin home. Mrs. Martin told him that the man who had robbed her was next door in a two-flat building. The officer then entered the building and brought down the defendant. At that time, Mr. and Mrs. Martin were on their porch. The officer had told defendant that he had been pointed out as one of the people

who had committed the robbery next door. The Martins walked over to the sidewalk and defendant was accused of the robbery. Defendant made no response.

After timely objection by defendant had been overruled, a court reporter read to the jury a transcript of the testimony of the late Richard Martin given before the court at a preliminary hearing regarding participation of defendant in the robbery. He had died on May 28, 1972, at about 82 years of age. The transcript reflected the deceased had testified that at the holdup the defendant took the money from his wife and that the other person took the money from him. Both of these men had weapons. They came in and asked for cigarettes, which he served them, and then announced a holdup. Both left together. He had never seen defendant in the store before that day.

Defendant testified that he lived with his wife and four children about one-half block from the grocery store. He had lived there for almost 2 years prior to the date of the robbery. He had worked for the same employer for about 5 previous years. He denied in categorical terms that he had committed the armed robbery and testified that he did not have possession of a double-barreled shotgun on the day in question and never owned a gun. He testified that the time records of his company showed that on Saturday, November 20, 1971, he punched in at 5:37 A.M. and left work at 2:38 P.M. He had seen Mrs. Martin in the store on many occasions before the robbery and two times after the date thereof. On January 2, 1972, he was visiting a woman named Dorothy Wallace, a sister of his wife. At that time, the police ordered him to come downstairs where he was lined up with several other men. Mrs. Martin, when asked which one was guilty, pointed to him first and said, "Him and I believe him," pointing next to his brother-in-law. It should also be noted that in rebuttal, Officer William Zielinsky testified that he was present at this incident and that Mrs. Martin pointed out only the defendant by way of identification.

Defendant also called his former landlady who testified to his good reputation in the community for being a peaceful and law-abiding citizen. He also called a friend who has known him since 1966 and who saw him practically every afternoon during the past year. This witness expressed the opinion that defendant had a good reputation in the community as being a law-abiding person. He also testified on cross-examination that on November 20, 1971, at about 6 P.M. or a little after, both of them had something to eat at the home of defendant's mother-in-law. That would be approximately between 6:30 and 7 o'clock. This witness also testified that he found out about defendant being involved in the charge of robbery on "the next morning" although it appears that he

might have used this term in referring to the morning after defendant's arrest which occurred on January 2, 1972.

■■ In analyzing this record, the test simply stated is whether the evidence is so unsatisfactory as to justify a reasonable doubt of guilt. (*People v. Benedik*, 56 Ill.2d 306, 310, 307 N.E.2d 382.) Undoubtedly there are discrepancies and contradictions in the evidence submitted by the prosecution. The issue is whether these matters are sufficient to raise a reasonable doubt of guilt or whether they go merely to the credibility of the testimony. An analysis of the testimony shows the following:

1. The conviction depends entirely upon the identification testimony without corroboration by any other type of evidence such as recovery of loot or the finding of a weapon. Identification of defendant by Mrs. Martin and her husband did not occur until approximately 6 weeks after the alleged offense and identification by the third witness, the student James McCullum, was not made until approximately 11 weeks thereafter.

2. Mrs. Martin did not recall being present at a conversation between her husband and the police on the day of the robbery. Officer Goodwin testified that she was present at this time.

3. At trial, Mrs. Martin was unable to describe the offenders or their clothing as they were at the time of the robbery or the time of the arrest.

4. She could not give a description of the police officer who arrested defendant and could not even recall if he was black or white.

5. As regards the testimony of her deceased husband, read to the jury by the court reporter, it can best be described as perfunctory.

6. McCullum testified at trial that defendant was light complected and was armed with a double-barreled shotgun. Although he did not remember his testimony before the grand jury, he testified there that the robber with the light complexion was armed with a pistol.

7. McCullum had no recollection of the visit to the store by a police officer on the day of the alleged robbery. The officer testified that McCullum was present on that day.

8. The deceased, Mr. Martin, testified at the preliminary hearing that he sold a package of cigarettes to one of the intruders immediately before the holdup. On the contrary, McCullum testified that he himself served one of the robbers with a package of cigarettes. This is a damaging inconsistency. People might differ as regards their own observations during the period of the actual holdup, but so marked a difference should not exist with reference to acts which they themselves allegedly performed before the holdup took place.

■■ It is correct that minor discrepancies in testimony do not destroy the credibility of the witnesses. (*People v. Bell*, 53 Ill.2d 122, 125, 126,

290 N.E.2d 214.) When carefully read, the testimony of Mrs. Martin is doubtful almost to a point bordering upon incoherence. As stated, the testimony of her late husband was perfunctory and even fragmentary. When all of the matters above detailed are considered together, they are sufficient in their totality to raise a reasonable doubt as to the guilt of the accused.

■■ In addition, it must be noted that defendant produced evidence of his good character for being a peaceful and law-abiding citizen in the community. This evidence cannot be disregarded and it may be sufficient to raise a reasonable doubt of guilt. (*People v. Bush*, 4 Ill.App.3d 669, 673, 674, 281 N.E.2d 734.) Defendant had been steadily employed at the same firm for 5 years. He is a family man with four children. He lived within a short distance of the store and testified that he had visited the store both before and after the date of the alleged holdup. His testimony that he did in fact visit this neighborhood business from time-to-time seems more logical than the denial by other witnesses that they had previously seen him in the store. Furthermore, if he were guilty of this crime, it would be contrary to human experience for him to help some person change a tire so close to the store in which the holdup had taken place. All of these factors lend strong credence to his denial of guilt.

■■ It is true that the determination of credibility by the jury "should not be lightly set aside" (*People v. Ellis*, 53 Ill.2d 390, 395, N.E.2d 728) but the principle is equally potent that where testimony of the identification witnesses is vague, doubtful and uncertain, we must carefully weigh the surrounding circumstances to make certain of the sufficiency of the evidence to establish guilt beyond a reasonable doubt. (See *People v. Cullotta*, 32 Ill.2d 502, 207 N.E.2d 444.) In cases of this type where careful examination of all the evidence convinces us that there is "a serious and well founded doubt of a defendant's guilt, the conviction must be reversed." (*People v. Sledge*, 25 Ill.2d 403, 407, 185 N.E.2d 262.) This entire record leaves us with a grave and serious doubt of guilt. The judgment should be and is reversed. (See authorities cited by the dissent in *People v. Stombaugh*, 52 Ill.2d 130, 139, 140, 284 N.E.2d 640; also *People v. Mostafa*, 5 Ill.App.3d 158, 179, 180, 274 N.E.2d 846, *petition for leave to appeal denied*.) This conclusion makes it unnecessary for us to consider the remaining contentions of defendant.

Judgment reversed.

BURKE and HALLETT, JJ., concur.