THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUGUSTUS L. LINDO, Defendant-Appellant.

Second District   No. 2—86—0935

Opinion filed May 19, 1988.—Rehearing denied June 17, 1988.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Dale M. Wood, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Augustus L. Lindo, was convicted by jury in the circuit court of Du Page County of unlawful possession of cannabis with the intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)) and unlawful delivery of cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)). Following denial of his post-trial motion, defendant was sentenced on the conviction for unlawful delivery to pay a fine of $6,500 and serve three years in the State penitentiary. Defendant appeals contending that the trial court erred in failing to instruct the jury on

the defense of entrapment. We reverse and remand for a new trial.

On April 16, 1985, Agent Jose Marrero of the Illinois State Police and Jose Ramirez, an undercover informant, met defendant at a Denny's restaurant in Willowbrook, Illinois. Marrero and Ramirez had previously arranged for Marrero to purchase one pound of hash oil from defendant for $6,500. Defendant approached Marrero and Ramirez in the restaurant and asked them if they had "the stuff." Marrero testified that "stuff" was a term for money. Marrero told defendant that they had the the money in Marrero's car. After talking for a few minutes, the three went out to defendant's car and discussed such details as the cost and geographical source of the merchandise. The parties then drove to the parking lot of a different restaurant, defendant driving himself and Ramirez, and Marrero following in his own car. Defendant opened the trunk of his car and showed Marrero a brown paper package, which Marrero picked up and felt. When Marrero returned the package and began counting the money, Ramirez gave the prearranged arrest signal and other agents participating in the operation moved in to arrest defendant. Marrero then looked inside the package and found two sealed bags of a brown substance later determined to contain cannabis.

Defendant testified at trial that he is a native of Jamaica and has resided in the United States for eight years. According to defendant, Ramirez first approached him in 1984 when defendant was working as an auto mechanic at a Zayre store. Ramirez had several conversations with defendant during which Ramirez would raise the subject of drugs. During one such conversation, Ramirez suggested that, since defendant was Jamaican, he might help Ramirez with a drug transaction. Specifically, Ramirez wanted defendant to pose as a drug dealer to bolster the quality of the drugs he was trying to sell. Ramirez arranged a meeting with a third person during which he handed the other person a package. Defendant, as Ramirez had instructed him, then told the person that the package contained hash oil, which was made from marijuana. According to defendant, this transaction was never completed. The third person in that transaction was later identified as Kevin Callanan, a Federal narcotics agent. Callanan did not complete the transaction at that time for fear of jeopardizing other ongoing investigations.

Defendant further testified that he did not see or hear from Ramirez again until encountering him at a restaurant in April 1985. At that time, Ramirez reminded defendant of how defendant had helped Ramirez previously and asked defendant if he could help him again by doing "the same thing as before." On April 16, 1985,

Ramirez came to defendant's apartment carrying a bulky brown paper package which he referred to as the "thing." They put the package in the back of defendant's car, and Ramirez told defendant to tell the buyer the same things he had told Callanan the year before. Ramirez then left to meet Marrero and subsequently called defendant with instructions to meet them at the Denny's. Defendant testified that he did not know what the package contained but that he knew it was illegal and valuable. On rebuttal, Ramirez denied defendant's version of events.

During the instruction conference, the parties and the court engaged in an extensive colloquy regarding defendant's entitlement to an instruction on entrapment. Specifically at issue was whether defendant had admitted the requisite mental state supporting the charges of possession of cannabis with intent to deliver and delivery of cannabis. The court stated:

> "I am talking about the Defendant's evidence and the position he is taking. He is taking the position that he knew those things, but that is far as it goes. You can know something is illegal. You use the term 'substance' as opposed to things or something else, but in any event, it seems to me that he may know the thing is whatever it is, is illegal, and valuable, but that does not, in my opinion, amount to his concession that he had the requisite intent, requisite mental state.
>
> You can have knowledge the thing is illegal and valuable, but that doesn't mean that your mental state is such you knew it was a narcotic."

After additional argument, the trial court refused the tendered instruction, stating:

> "I think he has not admitted the fact he knew marijuana was being delivered. I don't think he admitted those things that he must admit before the defense is available. And that is my ruling. I am not giving the entrapment instruction."

The jury subsequently returned guilty verdicts on both charges. Defendant appealed following denial of his post-trial motion.

The narrow issue before this court is whether the trial court erred as a matter of law when it refused to give the entrapment instruction after determining that defendant failed to admit that he knew the package contained cannabis. We have reviewed the record and conclude that defendant made a sufficient admission to establish knowledge and was, therefore, entitled to the entrapment instruction.

■ The statutory definition of entrapment states that "[a] person is not guilty of an offense if his conduct is incited or induced by a

public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person." (Ill. Rev. Stat. 1985, ch. 38, par. 7—12.) In Illinois, the party pleading entrapment must first admit each of the facts constituting the offense for which he is charged. (*People v. Arriaga* (1981), 92 Ill. App. 3d 951, 955.) Failure to admit commission of the crime precludes the defendant from claiming that the jury should have been instructed on entrapment. *People v. Fleming* (1971), 50 Ill. 2d 141, 144; *Arriaga*, 92 Ill. App. 3d at 954.

In the instant case, the trial court concluded that defendant never admitted, and thereby denied knowledge, that the substance in the brown package was hash oil. However, a fair reading of defendant's testimony reveals that he was aware of the nature of the substance. Defendant's testimony indicates that on the first occasion defendant posed as a dealer for Ramirez, Ramirez told defendant that the package he was selling contained hash oil. Defendant further testified that on this, his second masquerade as a drug dealer, Ramirez told him he was doing "the same thing as before" and that he should tell the buyer the same things he had told the buyer in the first transaction. Although defendant testified on both direct and cross-examination that he did not open and, therefore, did not know what was inside the package, he also testified that he was unfamiliar with drugs and drug terminology. Defendant nonetheless testified that he did know that the package contained an illegal substance.

■ A defendant is entitled to an instruction on a defense theory if he presents only slight evidence of it. (See *People v. Bratcher* (1976), 63 Ill. 2d 534, 540; *People v. Foreman* (1987), 153 Ill. App. 3d 346, 356.) Defendant has certainly presented slight evidence that he had knowledge of the package's contents. Knowledge of a material fact includes the person's awareness of the *substantial probability* that such a fact exists. (Ill. Rev. Stat. 1985, ch. 38, par. 4—5(a).) Defendant's testimony in the record indicates that defendant knew to a substantial probability that the package he was in possession of and delivering to Marrero contained hash oil. Accordingly, we conclude that the trial court erred when it determined that defendant was not entitled to an instruction on entrapment for failure to admit knowledge.

The State nonetheless argues that even if we find that defendant admitted knowledge, the trial court was still correct in refusing the instruction. According to the State, the record indicates that defendant was predisposed to commit the crime; therefore the court's refusal to submit the instruction was correct on that basis. We disagree.

■ Before instructing the jury on any affirmative defense, the trial court must initially resolve the threshold question of whether some evidence supports the particular theory. (*Foreman*, 153 Ill. App. 3d at 356.) An entrapment defense is not available to a defendant when the police agent merely affords the defendant an opportunity to carry out a criminal purpose which the defendant has originated. (Ill. Rev. Stat. 1985, ch. 38, par. 7–12.) If the defendant is engaged in a course of conduct involving similar offenses, he cannot successfully maintain that he was entrapped. (*Foreman*, 153 Ill. App. 3d at 356.) The lack of predisposition to engage in illegal activity is an essential element of the defense of entrapment. 153 Ill. App. 3d at 356.

■ Here, the State argues that defendant's participation in the 1984 transaction with Ramirez and Callanan established defendant's predisposition and precluded his entrapment defense. This argument is not well taken. The 1984 transaction was with the same police informant involved in the transaction underlying the instant action. According to defendant, in both cases Ramirez contacted defendant, supplied the drugs, and merely asked defendant to pose as the drug dealer to bolster the sale with his Jamaican ethnicity. The 1984 transaction was not completed and does not appear to have been a separate and independent transaction establishing defendant's predisposition. Rather, a jury may conclude that it was in fact part of a continuing course of conduct by Ramirez which constitutes an improper inducement. It would be absurd indeed to hold that a defendant's predisposition to commit a crime can be shown through a prior uncompleted transaction which may itself have been improperly induced without predisposition.

In summary, nothing in our holding should be construed as a comment on the success of the entrapment defense in this case. Rather, our review of the record simply indicates that defendant admitted the elements of the offense and was entitled to receive an entrapment instruction. Accordingly, his conviction is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

LINDBERG, P.J., and NASH, J., concur.