ARCHVIEW INVESTMENTS, INC., Plaintiff-Appellant, v. THE CITY OF
COLLINSVILLE *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0530

Opinion filed December 12, 1991.—Rehearing denied January 21, 1992.

William A. Mueller, of Ripplinger & Dixon, of Belleville, for appellant.

Thomas Lay Burroughs, of Draheim & Pranschke, and Kathleen L. Pine, of Shepherd, Phoenix & von Gontard, P.C., both of St. Louis, Missouri, for appellee Robert L. DesPain.

G. Edward Moorman, of Williamson, Webster, Groshong, Moorman & Falb, of Alton, for other appellees.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Archview Investments, Inc., appeals from a judgment of the circuit court of Madison County in favor of defendants, City of Collinsville, Mayor Gene J. Brombolich, City Clerk Louis Jackstadt, Zoning Administrator Melvin Heinecke, and city council members Robert L. DesPain, William F. Giglotto, Gary Klein, and Melvin P. Pamatot, entered after a bench trial, finding that plaintiff's building permit application was properly denied.

In this appeal, plaintiff contends: (1) that defendants' actions deprived it of constitutional rights in violation of section 1983 of the United States Code (42 U.S.C. §1983 (1988)), (2) that defendants, city council members, should not have been granted qualified immunity by the circuit court, (3) that the administrative decision of the city council is against the manifest weight of the evidence, and (4) that the trial court erred in not issuing a writ of *mandamus* to compel issuance of the building permit. We affirm.

On October 21, 1980, Dr. Bolivar Escobedo, an obstetrician/gynecologist licensed to practice in Missouri, filed an application for a permit to build an office building on a parcel of land he owned in Collinsville. He filed the application with the proper authorities in the City of Collinsville (City). Although the application was completed by Dr. Escobedo's architect, Thomas Hall, Dr. Escobedo was listed as the owner of the proposed building, described on the application as an "office building for doctor, with a rental space for more doctors."

City Zoning Administrator Melvin Heinecke testified that upon receipt of the application, he presented it to Mayor Gene J. Brombolich (Mayor) for review, and the Mayor instructed Heinecke to "bury it." Heinecke further testified that there was no discussion between himself and the Mayor at that time regarding any deficiencies in Dr. Escobedo's application. Shortly thereafter, the Mayor, who also serves as police commissioner, requested a police investigation of Dr. Escobedo's background. A memorandum dated November 6, 1980, to Police Commander Nick Mamino from Detective John Swindle revealed that

Dr. Escobedo performed abortions as part of his medical practice in St. Louis County, Missouri. The memo further stated that Dr. Escobedo's St. Louis County office had attracted antiabortion protesters and police intervention was occasionally necessary. Also included was the indication by a St. Louis police officer that neither Dr. Escobedo nor his associates had ever deliberately created any problems. No further action was taken on Dr. Escobedo's application, and none was requested.

On January 28, 1981, articles of incorporation of the plaintiff corporation were filed with the Illinois Secretary of State. On March 10, 1981, the City received another application for a permit to build a "multi-tenant office building" at the same location indicated by Dr. Escobedo's application of October 21, 1980. The March 10, 1981, application was also prepared by Thomas Hall, but plaintiff corporation was listed as the owner. The specifications and floor plans were similar to the documents submitted with the October 21, 1980, application, and Zoning Administrator Heinecke once again brought the application to the Mayor's attention. The Mayor initiated a second investigation by Detective Swindle regarding the application submitted by plaintiff. The results of that investigation were sent in a memorandum dated March 13, 1981, from Detective Swindle directly to the Mayor. Based on the contents of the memo, it appears that the Mayor was attempting to ascertain whether Dr. Escobedo was associated with plaintiff. Detective Swindle reported that after contacting numerous individuals, he was unable to determine anything other than the identities of the incorporator and the registered agent, neither of whom was Dr. Escobedo. According to the report, Thomas Hall was contacted but refused to disclose Dr. Escobedo's affiliation with plaintiff corporation, if any. Hall referred the detective to Buddy Cooper, an attorney for plaintiff, who claimed he could not divulge any information without conferring with his client. Only after numerous inquiries was the City able to determine that Dr. Escobedo was the sole shareholder of plaintiff.

On March 23, 1981, the Mayor sent Dr. Escobedo a letter denying the building permit. Cited as reasons for denial were the following: (1) the City was unable to discover pertinent information missing from the face of the application, and (2) that abortion clinics are contrary to the general health, safety and welfare of the public.

Fourteen days after receiving the Mayor's letter, plaintiff filed an appeal of the Mayor's decision with the Zoning Board of Appeals (Zoning Board). Plaintiff was then advised by the City's corporation counsel, Dwight Taylor, that zoning was not at issue, whereby plain-

tiff transferred his appeal to the city council. According to the Collinsville Municipal Code (Code), article V, section 501.1, appeals to the Zoning Board must be filed within 15 days of the matter complained of. Conversely, chapter 16, section 16.20.010, of the Code requires that all appeals to the city council regarding building permit decisions must be filed within five days of the occurrence giving rise to the appeal. There is a dispute among the parties as to the timeliness of plaintiff's appeal to the city council and whether defendants waived any time limitations. Plaintiff claims the City's corporation counsel, Dwight Taylor, assured plaintiff's attorney that the City would waive the five-day limitations period and allow plaintiff to transfer its appeal from the Zoning Board to the city council. Plaintiff entered into evidence a memorandum allegedly dictated by plaintiff's counsel at the time of his conversation with Taylor, noting the waiver agreement. At trial, Taylor denied making such a statement on behalf of the City.

Nevertheless, the city council, comprised of the Mayor and Commissioners Pamatot, Giglotto, Klein and DesPain, did hear plaintiff's appeal on July 20, 1981. The city council questioned Dr. Escobedo and Thomas Hall regarding the use of plaintiff's proposed building, the building plans and the timeliness of plaintiff's appeal, but a transcript of the hearing clearly reveals that the council's paramount concern was whether Dr. Escobedo or any of his associates would be performing abortions in the City. Commissioners Pamatot and Giglotto made statements on the record reflecting their personal aversion to abortion. The hearing culminated in a motion by Commissioner Pamatot to uphold the Mayor's decision to deny plaintiff's building permit on the following grounds:

"1. Appeal was not filed in compliance with the requirements of Sec. 16.20.010 of the Collinsville Municipal Code,

2. It is contrary to the general health, safety and welfare of the public in the following respects:

(a) cause traffic problems

(b) cause parking problems

(c) cause crowd control problems

(d) create a public nuisance

(e) is contrary to public policy of this city

3. Applicant failed to comply with requirements of the BOCA Basic Building Code/1981, Sections 111.2; 111.3; 111.4; 111.5; 111.6; and 111.7."

The motion was seconded and unanimously passed by the City Council. Building Officials Conference of America Code (BOCA) provisions 111.2 through 111.7 as adopted by the City are as follows:

"**111.2 Form of application:** The application for a permit shall be submitted in such form as the building official may prescribe and shall be accompanied by the required fee as prescribed in Section 114.0.

**111.3 By whom application is made:** Application for a permit shall be made by the owner or lessee of the building or structure, or agent of either, or by the licensed engineer or architect employed in connection with the proposed work. If the application is made by a person other than the owner in fee, it shall be accompanied by a duly verified affidavit of the owner or the qualified person making the application that the proposed work is authorized by the owner in fee and that the applicant is authorized to make such application. The full names and addresses of the owner, lessee, applicant, and of the responsible officers, if the owner or lessee is a corporate body, shall be stated in the application.

**111.4 Description of work:** The application shall contain a general description of the proposed work, its location, the use and occupancy of all parts of the building or structure and of all portions of the site or lot not covered by the building or structure, and such additional information as may be required by the building official.

**111.5 Plans and specifications:** The application for the permit shall be accompanied by not less than two copies of specifications and of plans drawn to scale, with sufficient clarity and detail dimensions to show the nature and character of the work to be performed. When quality of materials is essential for conformity to this code, specific information shall be given to establish such quality; and this code shall not be cited, or the term 'legal' or its equivalent be used, as a substitute for specific information. The building official may waive the requirement for filing plans when the work involved is of a minor nature.

**111.6 Site plan:** There shall also be a site plan showing to scale the size and location of all the new construction and all existing structures on the site, distances from lot lines, the established street grades and the proposed finished grades; and it shall be drawn in accordance with an accurate boundary line survey. In the case of demolition, the plot plan shall show all construction to be demolished and the location and size of all existing structures and construction that are to remain on the site or plot.

**111.7 Engineering details:** The building official may require adequate details of structural, mechanical and electrical work to be filed, including computations, stress diagrams and other essential technical data. All engineering plans and computations shall bear the signature of the engineer or architect responsible for the design. Plans for buildings more than two stories in height shall indicate where penetrations will be made for electrical, mechanical, plumbing and communications conduits, pipes and systems and the materials and methods for maintaining the required structural integrity, fire resistance rating and firestopping.''

We first turn to plaintiff's contention that the administrative decision of the city council denying plaintiff's building permit is against the manifest weight of the evidence. It is undisputed that findings and conclusions of an administrative body on questions of fact are held to be *prima facie* true and correct. Only if the findings are against the manifest weight of the evidence can they be set aside. (*Fadler v. Illinois State Board of Education* (1987), 153 Ill. App. 3d 1024, 1026, 506 N.E.2d 640, 642.) A finding cannot be adjudged against the manifest weight of the evidence unless an opposite conclusion is clearly evidenced from the record. *Rolando v. School Directors of District No. 125* (1976), 44 Ill. App. 3d 658, 661, 358 N.E.2d 945, 947.

■ Upon an examination of the record, we cannot determine that the city council's decision to deny plaintiff's building permit for lack of information was against the manifest weight of the evidence. In fact, plaintiff does not deny that its application failed to comply with BOCA provisions 111.2 through 111.7. The trial court held, and we agree, that plaintiff's application failed to meet the requirements of the BOCA provisions as follows: (1) it failed to include a filing fee as required by section 111.2; (2) it failed to include the names and addresses of the officers of plaintiff corporation as required under section 111.3; (3) it failed to contain an adequate description of the use and occupancy of all parts of the building, as required by section 111.4; (4) it failed to include specifications and plans with sufficient clarity and detailed dimensions to show the nature and character of work to be performed, as required by section 111.5; (5) it failed to include a site plan scaled to show boundary lines and distances from lot lines, in violation of section 111.6; and (6) it failed to contain adequate plans for electrical, ventilation and plumbing systems in violation of section 111.7.

■■ ■ These violations, in addition to Dr. Escobedo's repeated refusals to supply defendants with the missing information, were adequate reasons for defendants to decline issuance of the permit. Plaintiff claims that its noncompliance with the provisions was not the true reason its permit was denied and that defendants refused to issue the permit solely or primarily because of an aversion to abortion. We have no doubt that several or perhaps all city council members considered the abortion issue in deciding to deny plaintiff's application, and had plaintiff's application complied with all city ordinances, we would now be compelled to address the constitutional implications of defendants' actions. Plaintiff's application did not comply, however, so we need not address defendants' consideration of the abortion issue in their decision-making. As stated by our supreme court on numerous occasions, constitutional questions will not be considered unless necessary to the disposition of the case. (*Davis v. City of Chicago* (1974), 59 Ill. 2d 439, 322 N.E.2d 29; *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872; see *Ashwander v. Tennessee Valley Authority* (1936), 297 U.S. 288, 80 L. Ed. 688, 56 S. Ct. 466 (Brandeis, J., concurring).) The constitutional issue in this instance is presented under section 1983 of the United States Code (42 U.S.C. §1983 (1988)). Questions specifically based on section 1983 need not be addressed unless necessary to the disposition of the case. (*Cochenour v. Cochenour* (8th Cir. 1989), 888 F.2d 1244; *Espino v. Besteiro* (5th Cir. 1983), 708 F.2d 1002.) As we have determined that the evidence supports defendants' action of denying plaintiff's permit based on ordinance violations, we find it unnecessary to address the constitutional issues plaintiff presents. We also need not address defendants' argument that plaintiff's appeal to the city council was untimely, but instead we hold that defendants waived any time limitations by conducting the appeals hearing of July 20, 1981. Since the evidence supports defendants' decision to deny the permit based on BOCA violations, we affirm the trial court's decision in favor of all defendants based on this issue.

■ Finally, we uphold the trial court's decision not to issue a writ of *mandamus* to compel issuance of the building permit. In order to be entitled to a writ of *mandamus*, plaintiff must show a clear, unambiguous right to what is requested and that official action refusing what is requested is devoid of support. Anything less than strict and complete compliance with all necessary and applicable provisions for building permits must result in a denial of a writ of *mandamus*. (*People ex rel. Wordell v. City of Chicago* (1978), 67 Ill. App. 3d 321, 326, 384 N.E.2d 894, 898.) In this case, as we stated earlier, plaintiff's application was not in strict and complete compliance with all applicable

provisions, in that it failed to comply with BOCA provisions 111.2 through 111.7. Therefore, the trial court properly denied plaintiff's request for a writ of *mandamus* to compel issuance of the building permit.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

LEWIS and HOWERTON, JJ., concur.